Clarence **HUDGINS**, Appellant,

v.

**UNITED STATES** of America.

No. 14818.

United States Court of Appeals Third Circuit.

Submitted Nov. 9, 1964.

Decided Jan. 20, 1965.

**392**

Clarence Hudgins, pro se.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and FORMAN and SMITH, Circuit Judges.

BIGGS, Chief Judge.

Hudgins was indicted for the crime of robbing a bank. See 18 U.S.C. § 2113 (b) and (f). He was represented by an experienced counsel of his own selection, Donald Goldberg, Esquire, of the Bar of Pennsylvania. Prior to the impanelling of a jury, Hudgins' counsel moved to suppress certain physical exhibits and statements made by Hudgins to federal agents. After a hearing, this motion was denied. Hudgins' counsel then informed the court that Hudgins wished to change his plea of not guilty to guilty. The trial judge made a fair and lucid explanation to Hudgins of his rights and the penalties which might be imposed upon him if his guilty plea was accepted. The court stated to Hudgins that he understood that the proposed change of plea had been discussed by Hudgins with his counsel. The trial judge then asked Hudgins if he understood that if he pleaded guilty as charged the court could impose a maximum penalty of imprisonment for ten years or a fine in an amount as large as $5,000, or both. Hudgins replied: "I do." The trial judge then made a further explanation to Hudgins in respect to the amount which had been stolen from the bank, pointing out that Hudgins was accused of stealing $23,449 in currency and that the pertinent statute provided a maximum ten year penalty and a maximum of $5,000 fine or both if the amount stolen was proved to be in excess of $100. He then asked Hudgins the question: "Do you understand the offense with which you are charged?" Hudgins replied: "Yes, sir."

The court then inquired: "You wish to enter a plea of guilty?" Hudgins replied: "I feel that I am just incapable of making any plea, right at this time. My mind is all confused." The court then said that he felt that Hudgins had a difficult decision to make and that if Hudgins felt that he was not able to enter a plea of guilty that he, the trial judge, thought the trial should be proceeded with. From the bench he made a brief but rather complete statement as to the procedure which might be followed if Hudgins pleaded guilty and stated that Hudgins should have ample time to consider the course which he desired to pursue,[1] and whether or not it would be in his best interests to plead guilty. The

1. As follows: "The court: Well, this is a difficult decision for you to make and if your mind is confused and you are not able to make a plea I think we should go ahead with the trial because this is a serious matter and I do not want to have anybody make a decision which they regret. My suggestion, Mr. Goldberg, even though it will take a little while is that we go ahead and select the jury. Let Mr. Hudgins think about it. Maybe during the lunch hour you will have a little more time to think about it. As you know, we take a long lunch hour on Tuesday because we have a meeting with the judges from 12:30 to 2:00 and he can go over the situation and think about it in his own mind. I think he ought to be satisfied that this is what he wants to do. If you take something and you don't intend to return it, you see, that is taking it with intent to steal. Now, you told Mr. Shanahan you intended to return it or you thought about returning it, is that right, that is what he told us yesterday. You don't have to answer these questions, but assuming you take the stand and you tell the jury that maybe they will find that you intended to return it. I don't know whether they will or not, but of course, you kept it for a long time and if you want to know my view I think they probably will think you did not intend to return it. I think that is probably what they will find, but I don't know all the evidence. You know more about this than I do. I only know what I heard here yesterday. That is my first connection with the case except the lawyers came in and talked to me a little bit about it Friday, but I don't know as much about this case as you do, but this money, you see, was kept over several days and you didn't get in touch with the police. So, you have to evaluate whether you want the jury to decide the case or not, and we are here to give you a trial, a fair trial, just as fair a trial as we can and I am glad to do it. Unless you feel that you want to enter this plea I think we ought to go ahead with the trial until such time as you do, you know, such time as your mind is clear on it and you feel that you want to put yourself on the mercy of the Court. If you say to the Court, 'I did something I shouldn't have; it was wrong; I repent,' then obviously the Court gives you more consideration than if you don't repent, you know, if you stand as an unrepentant person; that is a person who doesn't admit they have done wrong. I don't want to suggest to you that you will not have to go to jail for some time because I suspect you will, although I won't make that decision until I get all I can find out about you past background. You know we have a pre-sentence report. We will get to your past background at the time if you are either convicted or you enter a plea. Then we make a thorough study of your life and we decide what is the best course in order to rehabilitate you. What are you likely to do in the future? What is the best way to make you a good citizen of the United States who obeys the law? Until I know about this—this shows all your marks at school; it shows everything about you that we can find out, and I am not in a position to tell you what I would do until I have all that information that I do not have now. At the time of your sentencing of course you can bring any witnesses you want to tell me about you; any character witnesses and others as I am sure Mr. Goldberg has told you." "Mr. Goldberg: Yes, sir." "The Court: So, don't you think we better go ahead with it and let you think it over during the lunch hour?" "The defendant: Yes, sir." "The Court: I will give you an opportunity at the end of the lunch hour, if you care to, to change your plea but I can not delay the trial because I am just holding up a lot of other people that we have whose cases have to be tried. We do not like to have people sitting around in jail wondering whether they are going to be convicted. They want to have their trial. They want to have their chance to prove they are not guilty just as you do. Therefore, I can not—we are at the point now we have to either go ahead with the trial or we do not, and you have to make that decision but I

court then took a long noon recess and after the recess, upon the court reconvening, Hudgins' trial was commenced. But on the following day, apparently in the morning, after conferring again with his counsel, Hudgins entered a plea of guilty. The trial court, after making a determination in accordance with Rule 11, Fed.R.Crim.Proc., 18 U.S.C., to the effect that the plea was made "voluntarily with understanding of the nature of the charge," accepted the plea.[2] See Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).[3] Sentence was pronounced upon Hudgins more than a month after his plea of guilty had been entered.[4] Before sentencing Hudgins the trial court asked as to whether or not Hudgins had anything to say in mitigation of the sentence which might be imposed upon him. At this point Hudgins made statements indicating his desire to repent and to effect restitution. Immediately after sentence was imposed, Hudgins himself, his counsel being present, announced that he had been coerced into pleading guilty and indicated dissatisfaction with his guilty plea. At this point his counsel, Mr. Goldberg, asked to be relieved from representing Hudgins further. The court granted Mr. Goldberg leave to withdraw. Hudgins attempted to have the court grant him a hearing then and there upon his claim of coercion. The court refused to hear him at that time but informed him that he could write to the court and give the court any grounds that he might have for granting the relief that he sought.

Thereafter, on August 5, 1963, Hudgins set a letter to the trial judge stating that he had forwarded a filing fee of $15.00, "relating to the pending application submitted in accordance with 28 U.S.C.A. Section 1915, which constitutes a preliminary application under 28 U.S.C.A. Section 2255. * * *" He requested a transcript of the proceedings, "complete as is possible" and requested a new trial, giving as his reasons that his "defense was not diligently represented [sic] nor was it properly prepared." He went on to say: "The ambiguous statements, to me, from my attorney caused me to plead guilty. I plead guilty on his advice." This was followed by more letters to the trial judge, the contents of which need not be set out here, and by an affidavit executed by Hudgins stating that he was a pauper. This affidavit

think you are a little unsettled on this and I would rather you would be certain as to what you want to do. Mr. Goldberg, I suggest we go ahead." "Mr. Goldberg: Fine, sir." "The Court: All right * * *. [B]ring the jury in."

2. The following appears in the record in respect to the acceptance of the plea: "The Court: * * * I have not put any pressure on you; have I?" "The Defendant: No." "The Court: And I have not promised you anything?" "The Defendant: No, sir." "The Court: Nobody promised you that you are going to get a certain sentence?" "The Defendant: No, sir." "The Court: I explained to you I have to look at the record before I make up my mind on this." "The Defendant: Yes, sir." "The Court: You understand that?" "The Defendant: Yes, sir." "The Court: And you would like to change your plea?" "The Defendant: I would." "The Court: All right. Will the Clerk please take the change of plea of the defendant." "The Clerk (Miss Manton): Clarence Hudgins, you have heretofore pled not guilty to the charge of bank larceny which consists of one count in Criminal No. 21295. How do you now plead?" "The Defendant: Guilty." "The Court: All right."

3. See the excellent discussion of the rationale and the standard to be applied in determining whether guilty pleas are voluntarily and knowingly made in Note, 112 U.Pa.L.Rev. 865 (1964) and Comment, 32 U.Chi.L.Rev. 167 (1964).

4. Hudgins was committed to the custody of the Attorney General for a period of three years to become eligible for parole at such time as the Board of Parole should determine, pursuant to Section 4208(a) (2), Title 18 U.S.C., and fined $25.00.

was treated by the trial judge as an application to proceed *in forma pauperis.* The court below ordered that he be supplied with a partial transcript of proceedings and a transcript of the hearing on April 15, 1963 on the motion for the return of the seized property and the suppression of evidence. At some point not clear from the record, William J. Stevens, Jr., Esquire, an assistant voluntary defender of the City of Philadelphia, appeared for Hudgins at the request of the trial judge and a pretrial hearing was had and a pretrial stipulation and order were filed. A supplemental pretrial order was later made in which the court in substance decided that Hudgins' plea could not be deemed frivolous. Hudgins was brought back into court and on October 8, 1963 he was granted leave to proceed *in forma pauperis.* On December 31, 1963, the trial judge filed a memorandum opinion [5] and an order refusing to permit Hudgins to withdraw his guilty plea and refusing to vacate his sentence. The appeal at bar followed. The court below granted Hudgins leave to proceed with his appeal *in forma pauperis.*

Two issues are presented for determination. First, Hudgins asserts in substance that the original search and seizure conducted by the federal agents was illegal and that this caused him to enter a plea of guilty when his counsel's motion to suppress the physical evidence and the statements given by him to federal agents was denied. Second, Hudgins asserts that he was coerced into entering the plea of guilty.[6]

 Section 2255, Title 28 U.S.C., supplies a valid means to challenge the constitutional validity of a guilty plea. Machibroda v. United States, supra; Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951). A conviction based on a coerced plea of guilty is void. Machibroda v. United States, supra. Ordinarily after a plea of guilty has been entered a collateral attack alleging errors in the admission of evidence, where the trial has been a partial one, or in proceedings prior to sentence is not permitted. This is because a plea of guilty stands as a plea to the indictment and "is itself a conviction." Kercheval v. United States, supra, 274 U.S. at 223, 47 S.Ct. at 583; Gawantka v. United States, 327 F.2d 129 (3 Cir.), cert. denied, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964); United States v. Williams, 212 F.2d 786 (7 Cir. 1954); United States v. Gallagher, 183 F.2d 342 (3 Cir. 1950), cert. denied, 340 U.S. 913, 71 S.Ct. 283, 95 L.Ed. 659 (1951). But where a defendant asserts that a denial of a motion to suppress evidence was a coercive factor in causing him to change his plea, the court in a Section 2255 proceeding, i. e., upon a collateral attack, may review any alleged error insofar as it is relevant to the voluntariness of the guilty plea. Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956). This was well put by Judge Freedman in United States ex rel. Perpiglia v. Rundle, 221 F.Supp. 1003, 1006 (E.D.Pa.1963). Judge Freedman stated: "A plea of guilty forecloses a defense, but it does not seal off subsequent inquiry whether the plea itself was freely and voluntarily entered." This brings us to the two issues raised by Hudgins. These two issues, as will be seen, tend to merge. We will deal with them immediately.

 1. *Was the denial of Hudgins' motion to suppress certain physical evidence and the statements made by him to federal agents in accordance with law?* We cannot perceive how the doctrine of the Claudy decision, supra, can

---

5. The memorandum opinion was not reported for publication. It should be noted that the judge who presided at the Section 2255 proceedings was the judge who received Hudgins' plea of guilty and who sentenced him.

6. In his petition Hudgins alleges he was "mentally coerced" into entering the plea of guilty. It is not alleged at any time that physical force was imposed upon his person or that he was subjected to any mistreatment which might have caused him to change his plea.

aid Hudgins here. In that case the defendant alleged in effect that his confession and subsequent guilty plea were coerced and that he had been denied a hearing by the United States district court on this issue. The circumstances of the Perpiglia case, supra, in which it was alleged that the confession and subsequent guilty plea were coerced, were similar though apparently more aggravated. But the substantive contention of Hudgins is that the allegedly erroneous ruling of the trial court as to the admissibility of the evidence caused his plea of guilty; in other words that he would not have entered the plea of guilty had it not been for the court's allegedly wrong ruling on the issue of suppression. But assuming arguendo, though we expressly do not so hold, that the ruling of the court below was in error on the issue of suppression, nonetheless Hudgins had a right to appeal this issue along with any others properly raised, had he been convicted after a trial. See Beck v. State of Ohio, 85 S.Ct. 223 (1964) and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Hudgins was represented by competent counsel and it must be assumed that this was a consideration which he and his counsel weighed in arriving at his decision to change his not guilty plea to one of guilty. Moreover, Hudgins testified in his own behalf at the Section 2255 hearing but he made no assertion that he had not received correct and adequate counsel in deciding whether or not he would enter a plea of guilty. His assertions to the contrary in what may be loosely called his pleadings are most general in nature and he has offered no evidence in support of them. Apparently, Hudgins' position is that an erroneous decision by a trial judge on a motion to suppress is per se coercive. We reject that contention. In accordance with the well-established limits of collateral attack of a guilty plea, we find no occasion to review the order denying the motion to suppress.

■ Hudgins contends that his counsel was incompetent because allegedly his counsel did not permit him to testify on the motion to suppress the physical evidence and the statements made by him to federal agents and that this in and of itself demonstrates his counsel's incompetence. While we are convinced that the issue of the competency of Hudgins' counsel is not properly raised on the present record, nonetheless we will discuss it. We cannot agree with Hudgins. Any statements made by him in his testimony at the hearing upon the motion, had he been permitted to testify, could have been used against him by way of impeachment at the trial. We regard the refusal of his counsel, if in fact there was a refusal, to permit him to testify at the hearing on the motion as an example of good trial tactics by an attorney versed in the criminal law. It should be noted that when Hudgins testified in the court below on the issue of the alleged wrongful seizure by the federal agents of cash in the amount of approximately $15,000 which was recovered from Hudgins' lock box in the bus station in Akron, Ohio, he could offer no convincing explanation as to how he came into possession of the money. His assertion was that he had won the substantial sum in gambling and that he was a "card sharp," and he endeavored to demonstrate his skill with cards in the court below. The court below found in respect to Hudgins' assertion that his counsel was incompetent that he had not sustained his burden of proof on this point. We are compelled to agree.

■ 2. *Was Hudgins' plea of guilty coerced?* The charge of coercion in the terms in which Hudgins has seen fit to phrase it is difficult to grasp. The alleged coercion seems to be based at least in part on a repetition of the assertion that an erroneous ruling by the trial court on the issue of suppression compelled Hudgins' plea of guilty. We have already found this contention to be without validity for the reasons set forth in "1", supra.

But there appears in Hudgins' Section 2255 allegations the contention that the statements made by the trial judge to Hudgins were understood by him as

promises of leniency in respect to the sentence to be imposed on him. In this connection see notes 1 and 2, supra. The trial judge did state to Hudgins that he would receive more consideration if he entered a plea of guilty. It should be noted that a ten year sentence could have been imposed on Hudgins but he was sentenced to imprisonment of three years and was fined $25.00 but subject to the provision that he could be released at any time by the Board of Parole pursuant to 18 U.S.C. § 4208(a) (2).

The trial judge, during the course of his colloquy with Hudgins, said: "If you say to the Court, 'I did something I shouldn't have; it was wrong; I repent,' then obviously the Court gives you more consideration than if you don't repent, you know, if you stand as an unrepentent person; that is a person who doesn't admit they have done wrong. I don't want to suggest to you that you will not have to go to jail for some time because I suspect you will, although I won't make that decision until I get all I can find out about your past background."[7] Nothing contained in these statements or others made by the court prior to the entry by Hudgins of his plea of guilty in our opinion can be deemed to be in any sense the equivalent of a promise of leniency.

We cannot deem the words quoted in the preceding paragraph as containing any suggestion to Hudgins that if he pled guilty he would escape a prison sentence and therefore we cannot deem those words to have constituted any substantial inducement to Hudgins to plead guilty. We think that what was said may be properly construed as an explanation to Hudgins that if he admitted his wrongdoing he would be taking the first step toward penitence and if he took this step he would be entitled to consideration in the sentence that he would receive if he pled guilty. It may be argued that it is not the judge's function to cause a defendant to become penitent but there are many who would contend to the contrary. The trial judge did not initiate or suggest a plea of guilty in the first instance, nor was there any bargaining by the trial judge.[8] See Note, 112 U.Pa. L.Rev. 865 (1964); Comment, 32 U.Chi. L.Rev. 167 (1964); majority and dissenting opinions in United States v. Cariola, 323 F.2d 180 (3 Cir. 1963); the three opinions in United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2 Cir. 1963); see also Euziere v. United States, 249 F.2d 293 (10 Cir. 1957); United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963).

It must always be borne in mind that Hudgins was given ample time and opportunity by the court below to consult with his counsel and consider the course which he desired to pursue. One cannot read this record without being struck by the thoroughness and empathy with which the entire matter was conducted by the sentencing judge and one is inclined to conjecture that Hudgins' very prompt objection to the sentence arose from the fact that he believed that he was sentenced to "three years" imprisonment rather than from any sincere belief on his part that he had been coerced into pleading guilty.

The judgment appealed from will be affirmed.

7. See note 1, supra.

8. The trial judge affirmatively told Hudgins that the sentence would take into consideration the pre-sentence report, whether on a plea of guilty or a verdict of guilty. See note 1, supra.