**UNITED STATES ex rel.**
**Clarence LOFTON**

v.

**David N. MYERS.**
**Misc. No. 3161.**

United States District Court
E. D. Pennsylvania.
April 1, 1966.

Alan David Silverman, Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty., of Philadelphia County, Michael J. Rotko, Asst. Dist. Atty. of Philadelphia County, Philadelphia, Pa., for respondent.

DAVIS, District Judge.

The relator was sentenced to life imprisonment for first degree murder by a three judge panel of the Court of Oyer and Terminer and General Jail Delivery of Philadelphia County after he had entered a plea of guilty to murder generally. He now petitions this Court for a Writ of Habeas Corpus, alleging that his constitutional rights were violated due to ineffective assistance of counsel, the failure to have counsel at his preliminary hearing, and the failure to be advised of his right to remain silent and of his right to counsel prior to the signing of his confession.

The relator, along with two other conspirators, committed a robbery at a broom factory at 2nd and Callowhill Streets in the City of Philadelphia on the afternoon of December 15, 1945. The relator remained outside as the lookout man while the other two entered the building. These two encountered the

owner and one of his employees; a tussle ensued; and one of the conspirators assaulted the two victims with a sash weight. Both died several days later as a result of these injuries. After the robbery, which netted some $175, the three divided up the money, had a few drinks at a local bar, and then separated. It was not until late May 1946, some six months later, that the crime was solved when the relator was arrested for another offense. The police were questioning him about a number of unsolved crimes in the city when he admitted his complicity in the robbery at the broom factory.

While in custody of the authorities, the relator signed a confession setting forth his part in the felony-murder. It was signed on the morning of June 8, 1946, some 14 days after he was taken into custody.

It was not until sometime later that same day, June 8, that he was given a preliminary hearing before a magistrate. The relator was warned of his right to remain silent but was not represented by a lawyer. He decided to speak and confirmed everything that one of the other conspirators had related at the hearing about the robbery and assault. His confession was also read. He was then held for court without bail.

Subsequently, the court appointed two attorneys to represent him since he was under indictment for murder. On January 31, 1947, in the presence of his counsel he withdrew his plea of not guilty and entered a general plea of guilty to murder. A three judge panel then heard testimony to determine the degree of murder and the penalty to be invoked. The evidence clearly indicated first degree murder because the killing took place in the perpetration of robbery. Probably due to his cooperation with the police and his nonparticipation in the actual killing of the two victims, he escaped the death penalty and was sentenced to life imprisonment.

■ The most serious allegation in his petition for a writ of Habeas Corpus is the failure of the police to warn him of his constitutional right to counsel and of his right to remain silent when they took him into custody. To this contention the relator has now coupled the additional element, first raised at this hearing, that the police beat him into making his confession. While the District Attorney vigorously denies coercion of any kind, he concedes that the police did not warn the accused of his rights as now required by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and United States ex rel. Russo v. State of New Jersey et al., 351 F.2d 429 (3d Cir. 1965).

The court is willing to admit that what really happened during that fateful period almost twenty years ago will probably never be fully known. However, on the evidence presented, we do not believe the story of the relator as to his being beaten. Now almost two decades after his arrest, at a time when most if not all the key witnesses who might refute this charge are dead or unavailable for one reason or another, he contends for the first time that he was physically intimidated into making his confession. He never once mentioned anything about coercion to his two attorneys and when asked why he had never said a word to them, he replied, "Because they didn't ask me." It is inconceivable to this court that any man who had been as severely beaten as the relator now claims would have thought it so inconsequential as not to have told his counsel about it. His testimony is incredible and will not be accepted by this court.

■ The fact still remains that the police did not warn the relator of his constitutional rights prior to his signing the confession. However, even assuming, without deciding, that Escobedo and Russo, supra, are retroactive, we find that under the circumstances of this case, he is not entitled to release from custody since his guilty plea was freely and understandingly made and in no way induced by the existence of his confession. United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3d Cir. 1965); Hudgins v. United States, 340

F.2d 391 (3d Cir. 1965); United States ex rel. Vaughn v. La Vallee, 318 F.2d 499 (2d Cir. 1963).

The relator pleaded guilty to murder generally in open court in the presence of his two attorneys. He was asked whether his plea was voluntary and he said that it was. He then took the stand and without hesitation related all the sordid details of this execrable felony murder. His confession was then introduced without objection. After the court imposed a sentence of life imprisonment, he willingly testified at several of the separate trials of his confederates, and in each case, he presented the same story of the crime and of his own involvement.

■ Almost 20 years after the fact, the relator for the first time states that the only reason he pleaded guilty was because of his coerced confession. Here again, the court does not find his testimony worthy of belief. At the proceeding before the three judge panel it was noted that he had been very cooperative in giving the police information about other crimes in the city, and this was one of the reasons the District Attorney recommended life imprisonment. There, and at the trials of his accomplices he testified freely and at length concerning his complicity. Furthermore, at the hearing before this court he admitted that "no one made [him] plead" and that he pleaded guilty on the advice of his attorneys, who believed that it was in his best interest to do so. See Meredith v. United States, 208 F.2d 680 (4th Cir. 1953); "Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas," 112 U.Pa.L.Rev. 865, 871–895 (1964); "Official Inducements to Plead Guilty," 32 U.Chi.L.Rev. 167 (1964).

■ The relator's guilty plea was therefore an intelligent decision made on the advice of two lawyers under very serious and difficult circumstances. It was a "voluntary and intentional plea of guilty on the advice of counsel," and thus "constitutes a waiver to any objection of prior proceedings which may also include violation of defendant's rights." United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592, 595 (3d Cir. 1965). This decision may have saved him from death in the electric chair, which was the penalty fixed in the case of one of his confederates who pleaded not guilty.

■ The relator cannot complain about the introduction of unconstitutionally tainted evidence since his conviction stands on the guilty plea, freely and understandingly made, and not on any evidence admitted against him. Smith v. United States, 347 F.2d 505 (7th Cir. 1965); Davis v. United States, 347 F.2d 374 (9th Cir. 1965); United States v. Farrar, 346 F.2d 375 (7th Cir. 1965); Hudgins v. United States, 340 F.2d 391 (3d Cir. 1965); United States v. French, 274 F.2d 297 (7th Cir. 1960); United States ex rel. Brady v. Myers, Misc. No. 2988, E.D.Pa., December 7, 1965.

While it is true that the confession was introduced at the hearing before the three judge panel of the Court of Oyer and Terminer and General Jail Delivery, it must be remembered that the purpose of that proceeding was not to decide the defendant's guilt or innocence but was limited to determining the degree of murder and the penalty to be imposed. Moreover, his confession was introduced without objection and only after the accused himself had testified to every essential detail that it contained.

■ We also find no merit to the petitioner's allegations that his attorneys represented him ineffectively or that his rights were violated because he was not represented by counsel at the preliminary hearing. As to the first contention, the record thoroughly refutes any possibility that his lawyers were ineffective. The fact that the accused is still incarcerated is no proof of their inability to represent him fairly and properly. As to the final contention, it need only be said that preliminary hearing is not a critical stage in the proceedings. White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. State of Alabama, 368 U.S.

52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). United States ex rel. Parker v. Myers, 233 F.Supp. 563, 564–565 (E.D.Pa.1964), aff'd per curiam 341 F.2d 303 (3d Cir. 1965). Nothing that took place at that point in any way affected the constitutionality of the relator's present confinement.

His petition for a Writ of Habeas Corpus must be denied.