The PEOPLE of the State of
Colorado, Petitioner,

v.

Sammy NARANJO, Respondent.

No. 91SC473.

Supreme Court of Colorado,
En Banc.

Oct. 26, 1992.

Rehearing Denied Nov. 16, 1992.

Stuart A. Van Meveren, Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Eighth Judicial Dist., Fort Collins, for petitioner.

David F. Vela, State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted the People's petition for certiorari to review the court of appeals' decision in *People v. Naranjo*, 821 P.2d 836 (Colo.App.1991), in order to determine whether the defendant, Sammy Naranjo, was deprived of his constitutional right to testify at his 1977 trial due to the failure of his trial attorney to adequately inform him of that right and, if so, whether any such deprivation was subject to the harmless-error rule. In affirming the district court's order granting the defendant's Crim.P. 35(c) motion and awarding him a new trial, the court of appeals concluded that the record supported the district court's determination that the defendant was denied his constitutional right to testify on his own behalf and that such a constitutional deprivation was not subject to harmless-error

analysis. Because the court of appeals resolved the defendant's constitutional claim under an incorrect standard, we reverse the judgment and remand the case for further proceedings.

### I.

In October 1976 the defendant was charged in the district court of Larimer County with the crimes of first degree kidnapping and first degree sexual assault, both of which occurred on September 25, 1976. An attorney was appointed for the defendant, and the case was tried to a jury in April 1977. The defendant did not testify as a witness at his trial nor did he present any other evidence in his defense. The jury found the defendant guilty on both counts, and the district court sentenced him to concurrent terms of life imprisonment for first degree kidnapping and fifty years for first degree sexual assault. In *People v. Naranjo*, 200 Colo. 1, 612 P.2d 1099 (1980), we affirmed the defendant's conviction for first degree sexual assault, reversed his conviction for first degree kidnapping, and remanded the case to the district court with directions to enter a judgment and sentence for the lesser included offense of second degree kidnapping. In 1981 the district court resentenced the defendant to an indeterminate term not to exceed ten years for second degree kidnapping.

In February 1985 the defendant, acting pro se, filed a Crim.P. 35(c) motion for postconviction relief. The defendant claimed that, notwithstanding his desire to testify on his own behalf, the trial court failed to obtain a knowing and intelligent waiver of his right to testify and that he also was denied effective assistance of counsel. The district court summarily de-

nied the defendant's motion without a hearing, but the court of appeals vacated the order and directed the district court to appoint counsel and to conduct such further proceedings as may be appropriate under the circumstances. *People v. Naranjo*, 738 P.2d 407 (Colo.App.1987). In December 1988 the public defender's office, acting on behalf of the defendant, filed a Crim.P. 35(c) motion alleging several grounds for postconviction relief including, as pertinent here, the defendant's claim that his trial attorney did not adequately advise him of his right to testify and that as a result of ineffective assistance of counsel he did not understand and was deprived of his constitutional right to testify on his own behalf at his 1977 trial.[1]

At an evidentiary hearing on the Crim.P. 35(c) motion, the defendant testified that at his 1977 trial he did not know that the decision on whether to testify was his to make regardless of his attorney's advice, that he told his court-appointed attorney that he wanted to testify, and that his attorney told him that he should not take the stand. The defendant's court-appointed attorney testified that his usual practice in 1977 was to put the defendant on the stand if the defendant "could help himself" but that he discouraged defendants from testifying if their testimony "would not go to the merits of the case or any lesser included offense that might be possible." Defense counsel also stated that he could not recall specifically whether he advised the defendant that the decision to testify was the defendant's to make, but the attorney did recall that he strongly discouraged the defendant from testifying and could not remember whether the defendant concurred in that advice.

---

1. In his original Crim.P. 35(c) motion, the defendant also alleged that his conviction was predicated on the admission of an unconstitutionally obtained confession, that he was subjected to an unduly suggestive identification procedure, that hearsay statements were admitted during his trial in violation of his right to confrontation, that the jury was improperly instructed in violation of due process of law, that the sentences imposed violated equal protection of the laws, and that he was denied effective

assistance of counsel on appeal. Several of these same claims were incorporated into a subsequent Crim.P. 35(c) motion filed by the public defender on behalf of the defendant. The only claim addressed by the trial court and the court of appeals, and the one claim we consider in this proceeding, is the defendant's allegation that he was denied his constitutional right to testify on his own behalf during the trial due to the actions of his court-appointed attorney.

At the conclusion of the Crim.P. 35(c) hearing, the district court made the following pertinent findings:

At the original trial, the Defendant was not advised of his right to testify and had no knowledge of it. He was not advised that he could override the advice of his attorney not to testify. Defendant wanted to testify. The denial of his right to testify has never been fully litigated and the proposition has not previously been presented by legal counsel.

The Defendant has only a sixth-grade education and all of his employment has been physical labor. The people with whom he has always associated are Spanish speaking. He experiences difficulty in understanding the English language, especially where it becomes technical and he has no knowledge of legal or appellate principles. Any failure to previously raise the right to testify issue in this case is excusable.

\* \* \* \* \* \*

The evidence establishes by a preponderance that there was no waiver of the right to testify.

On the basis of those findings, the district court concluded that the defendant was denied his fundamental constitutional right to testify on his own behalf during his 1977 trial and that the denial of the right could not be treated as harmless constitutional error.

The People appealed the district court's order to the court of appeals, which affirmed the order on the basis that there was competent evidence to support the district court's resolution of Naranjo's claim and that the denial of an accused's right to testify is not subject to harmless-error analysis. We thereafter granted the People's petition for certiorari.

### II.

The gravamen of the defendant's post-conviction claim in the district court was that he was denied his constitutional right to testify at his 1977 trial due to the failure of his trial counsel to adequately advise him of that right. In ordering a new trial, both the district court and the court of appeals emphasized that the defendant desired to testify but that his trial attorney's failure to adequately advise him of the right to testify deprived the defendant of the opportunity to make a voluntary, knowing, and intelligent waiver of the right to testify. In order to properly resolve the questions before us, it is necessary to determine the appropriate legal criteria for resolving the defendant's claim.

### A.

In 1984 this court decided *People v. Curtis*, 681 P.2d 504 (Colo.1984). We held in *Curtis* that an accused's right to testify is such a fundamental right that "the effectiveness of its waiver must be tested by the same constitutional standards applicable to waiver of the right to counsel." *Id.* at 512. Because of the fundamental character of the right, we outlined specific procedures which trial courts must follow to ensure that an accused has effectively waived the right to testify. These procedures require the trial court to advise the accused on the record and outside the presence of the jury as follows: that he has a right to testify; that if he wishes to testify, no one can prevent him from so doing; that if he testifies he will be subject to cross-examination during which prior felony convictions may be disclosed to the jury as they bear on his credibility; and that he has a right not to testify, and if he so elects the jury may be instructed about his decision to refrain from testifying. *Id.* at 514–15. We expressly declined in *Curtis* to apply these procedural requirements retroactively because, in our view, retroactive application "would be a significant burden on the administration of justice." *Id.* at 517. The defendant in the instant case, therefore, was not entitled to a *Curtis* advisement at his 1977 trial, nor was the trial court charged with the duty to determine on the record whether the defendant effectively waived his right to testify.

In limiting the procedural protections to prospective application, *Curtis* emphasized that the prospectivity of the decision should not serve to discharge courts "from their

duty to consider whether the waiver of the right to testify was in fact voluntary, knowing and intentional, whatever the state of the record made at trial and whenever the verdict was handed down." *Id. Curtis*, however, did not formulate the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver. We accordingly must determine what that legal norm should be.

### B.

■ In *Martinez v. People*, 173 Colo. 515, 480 P.2d 843 (1971), which involved an issue of ineffective assistance of counsel, we emphasized that there are three decisions which are ultimately to be made by the accused "after full and careful advice of his lawyer": whether to plead guilty; whether to waive a jury trial; and whether to testify at trial. 173 Colo. at 518, 480 P.2d at 844. We noted that while the right to effective assistance of counsel guarantees an accused the right to adequate advice of defense counsel on these decisions, the accused is not entitled to "an attorney with whose advice he can agree." 173 Colo. at 517, 480 P.2d at 844. We concluded in *Martinez* that nothing in the record established a violation of the right to effective assistance of counsel. Subsequently, in *Steward v. People*, 179 Colo. 31, 498 P.2d 933 (1972), a case which also involved an ineffective-assistance-of-counsel claim, we cited with approval the former version of the American Bar Association Standards of Criminal Justice Relating to the Defense Function for the proposition that, while some strategic or tactical decisions are the exclusive province of defense counsel after consultation with the accused, the decision on whether to testify is one to be made ultimately by the accused after consultation with defense counsel. 179 Colo. at 34, 498 P.2d at 934.[2]

Although *Martinez* and *Steward* did not expressly hold that the accused's right to effective assistance of counsel was the controlling constitutional norm for resolving an alleged denial of an accused's right to testify, both decisions viewed the accused's entitlement to adequate advice on the right to testify as an essential component of defense counsel's duty to provide effective assistance to the accused. In that respect, our discussion of the accused's access to advice on testifying in *Martinez* and *Steward* paralleled several pre–1977 federal decisions. In *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), for example, the United States Supreme Court characterized the accused's election to testify as "an important tactical decision as well as a matter of constitutional right" involving defense counsel's professional judgment concerning not only the exercise of the right but also its timing. *Id.* at 612–13, 92 S.Ct. at 1895. Other pre–1977 cases also viewed the right to testify as a matter of trial strategy, with the result that an alleged deprivation of the right was analyzed as a claim for redress based on ineffective assistance of counsel. *See Hayes v. Russell*, 405 F.2d 859, 860 (6th Cir.1969); *Hudgins v. United States*, 340 F.2d 391, 396 (3d Cir.1965); *United States v. Garguilo*, 324 F.2d 795, 797–98 (2d Cir.1963). In light of the defendant's postconviction claim that he was not adequately advised by defense counsel of his right to testify, we are satisfied that the right to effective assistance of counsel provides the appropriate legal norm for resolving the defendant's claim.

■ The authoritative standard for evaluating an ineffective-assistance claim was formulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

---

**2.** The present version of the ABA Standards for Criminal Justice Relating to the Defense Function, approved by the ABA House of Delegates in 1979, also adopts the view that an accused's decision to testify or not to testify during the trial is in the ultimate control of the accused. ABA Standards for Criminal Justice, The Defense Function, Standard 4–5.2 (2d ed. 1986). The commentary to Standard 4–5.2 points out

that defense counsel should give the accused the benefit of advice and experience and should engage in fair persuasion in urging he accused to follow the proper professional advice. However, because of the fundamental nature of the decision, "so crucial to the accused's fate," the ultimate decision is for the accused to make and not for defense counsel.

(1984). The *Strickland* standard consists of two components: first, whether defense counsel's performance was constitutionally deficient—that is, whether it was below an objective standard of reasonableness demanded of attorneys in criminal cases; and second, whether the deficient performance prejudiced the defense—that is, whether defense counsel's errors deprived the defendant of a fair trial. *Id.* at 687–88, 104 S.Ct. at 2064.

█ It has been held that the first component of the *Strickland* test requires a showing that the action or inaction of defense counsel deprived the defendant of his ability to make an informed decision on whether or not to testify on his own behalf:

> For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver is knowing and voluntary. Under such circumstances, defense counsel has not acted " 'within the range of competence demanded of attorneys in criminal cases,' " and the defendant clearly has not received reasonably effective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970)).

*United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir.1992).

The second or prejudice component of *Strickland* requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors," the result of the trial would have been different. 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a "probability sufficient to undermine the confidence in the outcome" of the trial. *Id.* In resolving an ineffective-assistance claim, a court is not required to first determine whether counsel's performance was constitutionally deficient; if there is no demonstration of prejudice, the court may resolve the ineffective-assistance claim on that basis alone. *Id.* at 697, 104 S.Ct. at 2069.

The *Strickland* standard for an ineffective-assistance claim has been applied retroactively. For example, in *Hill v. Lockhart*, 474 U.S. 52, 57–60, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985), the Supreme Court applied *Strickland* in evaluating an ineffective-assistance claim arising from a guilty plea entered several years prior to the *Strickland* decision. Similarly, in *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), the Court relied upon *Strickland* in holding that so long as the defendant was represented by counsel at his 1977 trial and counsel's performance was not constitutionally ineffective under the *Strickland* standard, there is no inequity in requiring the defendant to bear the risk of attorney error that results in a procedural default for purposes of habeas corpus relief. Several federal courts of appeal have also applied *Strickland* retroactively in evaluating the constitutional validity of pre-*Strickland* convictions. *See, e.g., Smith v. Black*, 904 F.2d 950, 974–75 (5th Cir.1990) (*Strickland* applied to determine whether defendant, during 1981 trial, was denied effective assistance of counsel); *U.S. ex rel. Weismiller v. Lange*, 815 F.2d 1106, 1109 (7th Cir.1987) (*Strickland* applied retroactively to determine whether counsel's performance was so deficient that it violated Sixth Amendment); *Adams v. Wainwright*, 804 F.2d 1526, 1534–35 (11th Cir.1986) (*Strickland* applied to determine whether defense counsel's performance at 1978 trial was constitutionally deficient). We also have applied the *Strickland* standard in resolving ineffective-assistance claims arising out of criminal proceedings predating the *Strickland* decision. *See, e.g., People v. Drake*, 785 P.2d 1257, 1272–73 (Colo.1990) (*Strickland* applied in determining constitutional validity of defendant's 1978 felony conviction); *People v. Pozo*, 746 P.2d 523, 526–30 (Colo.1987) (case returned to trial court

with directions to apply *Strickland* in determining constitutional validity of defendant's 1982 guilty plea). We accordingly hold that, consistent with the aforementioned precedent, the *Strickland* standard should be applied in resolving the defendant's post-conviction challenge to his 1977 conviction.

## C.

We turn now to the procedural and evidentiary criteria for resolving the defendant's post-conviction claim. In a Crim.P. 35(c) proceeding, there is a presumption of validity attaching to a judgment of conviction and the burden is upon the defendant, as the moving party, to establish his claim by a preponderance of the evidence. *E.g., People v. McClellan,* 183 Colo. 176, 178, 515 P.2d 1127, 1128 (1973); *Lamb v. People,* 174 Colo. 441, 446, 484 P.2d 798, 800 (1971). Under the *Strickland* standard, a defendant will establish a violation of his right to testify when he proves, by a preponderance of the evidence, the following elements: that defense counsel's action or inaction in counseling the defendant on his right to testify fell below the professional level of competence demanded of attorneys practicing in criminal law at the time of the defendant's trial and thereby deprived the defendant of his ability to make an informed and voluntary decision on whether to exercise his right to testify; and that there is a reasonable probability that, but for defense counsel's deficient performance, the result of the trial would have been different.

The *Strickland* standard requires the Crim.P. 35(c) court to evaluate the evidence from the perspective of defense counsel as of the time of the representation in question and to indulge a strong presumption that defense counsel's efforts constituted effective assistance. The Supreme Court made this point quite clearly when it stated in *Strickland:*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134 [102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana,* [350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See* Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 299, 343 (1983).

\* \* \* \* \* \*

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in

the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66.

Application of the *Strickland* two-part test in resolving an ineffective-assistance claim obviates any need to engage in harmless-error analysis. Under the harmless-error rule, a violation of a constitutional right will generally not be deemed harmless unless the prosecution, as the beneficiary of the violation, can establish beyond a reasonable doubt that the deprivation of the constitutional right did not contribute to the judgment of conviction. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *People v. Mack,* 638 P.2d 257, 267 (Colo. 1981). Pursuant to *Strickland,* once a defendant establishes to a reasonable probability that, but for defense counsel's deficient performance, the result of the trial would have been different, there is no conceivable way in which the prosecution could then establish that the deprivation arising out of the defendant's right to testify did not contribute to the judgment of conviction. The harmless-error rule, therefore, has no role to play in the resolution of the defendant's claim in the instant case.

### III.

The record before us clearly shows that the district court did not resolve the defendant's postconviction claim—namely, that he was denied his constitutional right to testify due to the failure of defense counsel to adequately advise him of that right—consistent with the principles of law previously discussed. The district court's grant of postconviction relief was based on its factual finding that the defendant wanted to testify but was not advised of his right to do so, and thus was unaware that he had the right to make the ultimate decision on whether to testify. The district court, however, never considered or resolved whether defense counsel's advice or lack of advice to the defendant concerning the right to testify fell below an objective standard of reasonableness required of an attorney practicing criminal law in 1977 and, if so, whether, but for defense counsel's deficient performance, a reasonable probability exists that the result of the defendant's 1977 trial would have been different. The court of appeals likewise erred in upholding the district court's ruling on the basis that "there is adequate evidence to support the district court's ruling on the defendant's request for postconviction relief." *Naranjo,* 821 P.2d at 837.

Because both the district court and the court of appeals applied an incorrect legal standard in resolving the defendant's Crim.P. 35(c) claim, it is necessary to remand this case for further proceedings. If the district court is convinced by a preponderance of the evidence that defense counsel's performance was constitutionally deficient and deprived the defendant of his right to testify and that, but for defense counsel's deficient performance, a reasonable probability exists that the outcome of the 1977 trial would have been different, the district court should vacate the judgment of conviction and order a new trial. If, however, the district court is not so convinced by a preponderance of the evidence, then it should deny the defendant's Crim.P. 35(c) motion.

We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for further proceedings consistent with the views herein expressed.

KIRSHBAUM, J., specially concurs.

LOHR, J., dissents.

MULLARKEY, J., does not participate.

Justice KIRSHBAUM concurring in the result only.

I concur in the result reached by the majority.

Justice LOHR dissenting:

In his Crim.P. 35(c) motion for postconviction relief, the defendant raised in paragraphs seven and eight the following grounds for relief:

7. Defendant's comprehension of the English language was so deficient that (1) the trial proceedings were incomprehensible to him and he was unable to actively assist counsel during pretrial and trial proceedings, and (2) he did not understand that he had a constitutional right to testify at the suppression hearing or trial.

8. Defendant was denied [ ]effective assistance of counsel at trial in violation of his Sixth Amendment rights.

Mot. for Postconviction Relief, *People v. Naranjo* (Larimer County Dist.Ct. Dec. 15, 1988) (No. 76CR7133).[1] The majority characterizes these grounds as "the defendant's claim that his trial attorney did not adequately advise him of his right to testify and that as a result of ineffective assistance of counsel he did not understand and was deprived of his constitutional right to testify on his own behalf at his 1977 trial," maj. op. at 321, and then, as a practical matter, it treats this claim simply as a claim that the defendant was denied effective assistance of counsel. *See* maj. op. at 321.[2] Because I read paragraphs seven and eight of the defendant's Crim.P. 35(c) motion as making at least two separate claims for relief (specifically, that he was denied effective assistance of counsel and he was also denied his constitutional right to testify), and because, contrary to the majority,[3] I believe that *People v. Curtis*, 681 P.2d 504 (Colo.1984), does formulate the legal norm for resolving a pre-*Curtis* violation of the right to testify, I respectfully dissent.

I

The defendant's case was tried to a jury in April 1977. The defendant did not testify as a witness at his trial, and he was convicted. In 1985 the defendant filed a pro se Crim.P. 35(c) motion for postconviction relief on grounds, among others, that he was denied his constitutional right to testify on his own behalf during his 1977 trial. *People v. Naranjo*, 738 P.2d 407, 408 (Colo.App.1987) ("In his [pro se] motion for postconviction relief, defendant alleged that: ... (3) in light of his expressed desire to testify, the trial court erred in failing to obtain his knowing and intelligent waiver of his right to do so"). The district court denied the motion without a hearing, but the court of appeals vacated the order of denial and directed the district court to appoint counsel and to conduct further proceedings. *Id.* at 408, 409. In the defendant's subsequent Crim.P. 35(c) motion, he alleged that "[his] comprehension of the English language was so deficient that ... (2) he did not understand that he had a constitutional right to testify at the suppression hearing or trial." Mot. for Postconviction Relief, *People v. Naranjo* (Larimer County Dist.Ct. Dec. 15, 1988) (No. 76CR7133).

Following an evidentiary hearing on December 29, 1988, in which the district court took testimony from the defendant and his 1977 court-appointed attorney, among others, the court found:

At the original trial, the Defendant was not advised of his right to testify and had no knowledge of it. He was not advised that he could override the advice of his attorney not to testify. Defendant wanted to testify. The denial of his right to testify has never been fully litigated and the proposition has not previously been presented by legal counsel.

The Defendant has only a sixth-grade education and all of his employment has been physical labor. The people with whom he has always associated are Span-

---

**1.** The original paragraph eight contains a typographical error and reads: "8. Defendant was denied ineffective assistance of counsel at trial. . . ."

**2.** "We accordingly hold that ... the *Strickland* [ineffective assistance of counsel] standard should be applied in resolving the defendant's

post-conviction challenge to his 1977 conviction." *Id.*

**3.** "*Curtis* ... did not formulate the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver." Maj. op. at 323.

ish speaking. He experiences difficulty in understanding the English language, especially where it becomes technical and he has no knowledge of legal or appellate principles. Any failure to previously raise the right to testify issue in this case is excusable.

. . . .

The evidence establishes by preponderance that there was no waiver of the right to testify.

Order on Mot. for Postconviction Relief, *People v. Naranjo* (Larimer County Dist. Ct. May 19, 1989) (No. 76CR7133). On the basis of these findings, the district court held that the defendant was denied his fundamental constitutional right to testify during his 1977 trial and that the denial of such a right was not subject to harmless error analysis.[4] *Id.* The court of appeals affirmed, *People v. Naranjo*, 821 P.2d 836 (Colo.App.1991), and we granted the People's petition for certiorari in order to determine whether the defendant's constitutional right to testify during his 1977 trial was violated and whether harmless error analysis applies to such violations. The majority now holds that for trials prior to our decision in *People v. Curtis*, 681 P.2d 504 (Colo.1984), the test for determining whether the defendant's right to testify was violated by defense counsel's inadequate advice during trial is whether the defendant was denied effective assistance

of counsel.[5] The majority also holds that under that test the defendant must prove by a preponderance of the evidence that but for his attorney's deficient performance there is a reasonable probability that the trial outcome would have been different, and, therefore, harmless error analysis "has no role to play in the resolution of the defendant's claim in the instant case." Maj. op. at 326.

As additional background for the understanding of this case, it is useful to summarize our 1984 decision in *Curtis*. In *Curtis*, two issues were raised regarding a defendant's right to testify in a criminal proceeding: What are the prerequisites to effective waiver of the right to testify, and what are the duties of the trial court concerning that right? *Curtis*, 681 P.2d at 511. After explaining the origin and nature of the constitutional right to testify, we held in *Curtis* that effective waiver of the right to testify must be voluntary, knowing, and intentional, and that the existence of an effective waiver should be ascertained by the trial court by engaging the defendant directly, on the record, outside the presence of the jury. *Id.* at 514–15. We further held that, as a prospective matter, the failure of the trial court properly to ascertain on the record the existence of an effective waiver is sufficient grounds for a retrial on the basis that the defen-

4. Chief Judge John–David Sullivan presided at the December 29, 1988, hearing, but he recused himself the next day. Judge Max Wilson was then assigned to the case. Judge Wilson reviewed the record and issued the May 19, 1989, order finding that Naranjo's right to testify had been violated and granting a new trial.

5. Exactly stated, the majority holds that "the *Strickland* [ineffective assistance of counsel] standard should be applied in resolving the defendant's post-conviction challenge to his 1977 conviction," maj. op. at 325, where "the defendant[ ] claim[s] that his trial attorney did not adequately advise him of his right to testify and that as a result of ineffective assistance of counsel he did not understand and was deprived of his constitutional right to testify on his own behalf at his 1977 trial." *Id.* at 321; *accord id.* at 322 ("The gravamen of the defendant's post-conviction claim in the district court was that he was denied his constitutional right to testify at his 1977 trial due to the failure of his trial

counsel to adequately advise him of that right."). Elsewhere the majority states that "*Curtis* ... did not formulate the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver. We accordingly must determine what that legal norm [presumably, the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver] should be." *Id.* at 323. The majority opinion is therefore arguably inconsistent on whether it means to establish the general, pre-*Curtis* test for violations of a right to testify predicated on a deficient waiver, or whether it means to establish the pre-*Curtis* test for violations of a right to testify predicated specifically on inadequate advice from defense counsel, or whether it means only to adopt a case-by-case analysis of pre-*Curtis* trials whereby, in this particular case, it establishes the test for whether Sammy Naranjo's right to testify was violated by inadequate advice from defense counsel.

dant's right to testify has been compromised.

Consistent with the prospective application of our newly announced procedural safeguards, we nevertheless proceeded in *Curtis* to examine each record before us [6] in order to determine whether it supported a finding that there had been a voluntary, knowing and intentional waiver of the right to testify. *Id.* at 515–16. Because the newly announced procedural safeguards were to be applied prospectively, we of course did not find, as a matter of law, that there was no effective waiver simply because the trial court had not properly ascertained the existence of waiver on the record. Instead, we searched each record, and found that, in the case of Arthur Curtis, the totality of the circumstances indicated that he did *not* voluntarily, knowingly and intentionally waive his right to testify. *Id.* at 515. Curtis was granted a new trial. *Id.* On the basis of our review of the record with regard to Dennis Ray Jones, we found the opposite to be the case, specifically, that the evidence supported the trial court's determination that he did effectively waive his right to testify, *id.* at 516, and we affirmed his conviction. *Id.*

In essence, the case of the defendant before us today is no different than the cases of Jones and Curtis as we reviewed them in 1984. That is, because Naranjo's trial took place before the *Curtis* procedural safeguards were announced, such safe-

guards do not apply. We therefore must look at the record in this case, as we did for Jones and Curtis in 1984, in order to determine whether Naranjo voluntarily, knowingly, and intentionally waived his right to testify. If he did not, like Curtis, he may be entitled to a new trial.[7]

## II

Both this court and the United States Supreme Court have recognized that the right to testify is thoroughly fundamental and essential to the due process of law guaranteed to every criminal defendant. *See Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987); *Curtis*, 681 P.2d at 509–14. The right to testify "is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Rock*, 483 U.S. at 51, 107 S.Ct. at 2708 (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975)). It has its source in the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment, and the Fifth Amendment's guarantee against compelled testimony, *Rock*, 483 U.S. at 51–53, 107 S.Ct. at 2708–10, and it is "so inherently personal and basic that fundamental fairness of a criminal trial is called into question if [it is] surrendered by anyone other than the accused, or if the accused relinquishes [it] in any manner other than by voluntary, knowing and intentional waiver." *Curtis*, 681 P.2d at 511,

---

**6.** *Curtis* involved two cases, *People v. Curtis* and *Jones v. People,* consolidated before this court for decision and opinion.

**7.** In *Curtis,* the People did not claim that denial of Curtis' right to testify was harmless error beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and, therefore, we specifically declined to decide whether the denial of the right to testify can be harmless beyond a reasonable doubt. *Curtis,* 681 P.2d at 515 n. 15. In the case before us, however, the People do argue that if there was error, it was harmless. The majority avoids directly having to address this issue by employing the second prong of the *Strickland* test according to which the burden is on the defendant to prove that there is a reasonable probability that the denial of his right to testify did affect the trial outcome. Hence,

without any real discussion of the issue, the majority transforms a case about whether the right to testify is so fundamental that denial of it is *never* harmless error into the conclusion that the denial of the right to testify is of such slight consequence that *the defendant* has the burden of proving to a reasonable probability that the denial of his right affected the trial outcome. I would hold, on the contrary, that any violation of a criminal defendant's personal and fundamental constitutional right to testify involves a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Arizona v. Fulminante,* — U.S. —, —, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), and that, therefore, the violation of a criminal defendant's right to testify is not subject to harmless error analysis. *See id.*

*cf. Rock,* 483 U.S. at 53 n. 10, 107 S.Ct. at 2710 n. 10 ("On numerous occasions the Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right."); *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf"). Accordingly, in *Curtis* we concluded:

> Because of the special evidentiary nature of the defendant's testimony, the importance of allowing the defendant to have his say regardless of its effect on the chances of acquittal, and the legitimacy that this opportunity confers upon the outcome of criminal proceedings, we hold that the constitutional right to testify is so fundamental that procedural safeguards are necessary to ensure that the defendant understands the significance of waiver of this right.

*Curtis,* 681 P.2d at 514; *see United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc) ("We now reaffirm that a criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel.").

### III

The majority looks for a pre-*Curtis,* 1977 test by which to assess whether there has been a violation of the defendant's right to testify because, according to it, "*Curtis* ... did not formulate the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver." Maj. op. at 323. On the contrary, however, the unambiguous language of *Curtis* enunciates that norm. In the penultimate paragraph of our substantive discussion in *Curtis,* we recognized that a retroactive application of our newly announced procedural safeguards "would be a significant burden on the administration of justice," *Curtis,* 681 P.2d at 517, and we therefore declined

to apply them retroactively. *Id.* at 516–17. The following paragraph in *Curtis* states:

> However, this [i.e., our declining to apply the newly announced procedural safeguards retroactively] does not discharge the courts from their duty to consider whether waiver of the right to testify was in fact voluntary, knowing and intentional, whatever the state of the record made at trial *and whenever the verdict was handed down.* The principle that the decision on whether to testify ultimately rests with the defendant, with defense counsel abiding by his wishes, *evolved long before our holding today.* Failure to adhere to it can substantially impair the truth-finding function of a criminal trial. Therefore, if waiver of the right to testify was not voluntary, knowing and intentional a defendant is entitled to relief [leaving open the question whether denial of the right to testify can be harmless error beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ].

*Id.* at 517 (emphasis added) (citations omitted).

The foregoing paragraph from *Curtis* plainly establishes that the legal test for resolving an allegation of a violation of the right to testify at a pre-*Curtis* trial is whether the "waiver of the right to testify was in fact voluntary, knowing and intentional, *whatever* the state of the record made at trial and *whenever* the verdict was handed down ... [and] if waiver of the right to testify was not voluntary, knowing and intentional a defendant is entitled to relief." *Id.* (emphasis added). Moreover, we actually applied this just-quoted holding to the two specific cases that were before us when we issued our opinion in *Curtis.* That is, as noted earlier, *Curtis* involved two cases, *People v. Curtis,* and *Jones v. People,* which were consolidated on appeal. Both cases involved trials that took place long before the *Curtis* procedural safeguards were announced. Each case therefore presented an instance of an allegation of "a pre-*Curtis* violation of the right to testify predicated on a deficient waiver."

*See* maj. op. at 323.[8] Consistent with our holding that day in 1984, we did not apply the *Curtis* procedural safeguards retroactively to either case, but we did apply "the legal norm for resolving a pre-*Curtis* violation of the right to testify predicated on a deficient waiver," *id.*, which is to say, for each defendant, Dennis Ray Jones and Arthur Curtis, we examined the totality of the record before us in order to determine if there had been a voluntary, knowing and intentional waiver. *Curtis*, 681 P.2d at 515–16. With regard to Curtis, and without pausing ever to consider whether his attorney's "advice or lack of advice to the defendant concerning the right to testify fell below an objective standard of reasonableness required of an attorney practicing criminal law in [1981]," maj. op. at 326,[9] we found that he was deprived of his right to testify because his trial attorney usurped from him the decision on whether to testify, *Curtis*, 681 P.2d at 515, despite the fact that Curtis gave evidence at a postconviction hearing that "he understood in a general sense that he had a right to testify." *Id.* at 508.[10] We held that Curtis was entitled to a new trial. *Id.* at 515. Likewise, with regard to Jones, and without pausing ever to consider whether his attorney's "advice or lack of advice to the defendant concerning the right to testify fell below an objective standard of reasonableness required of an attorney practicing law in [1974]," maj. op. at 326,[11] we sustained the trial court's determination that he had effectively waived his right to testify at his 1974 trial. *Curtis*, 681 P.2d at 515–16. In so doing, we deferred largely to the findings of the trial court because we viewed the issue as "essentially a question of credibility" in light of the inconsistent testimony offered at Jones' hearing on postconviction relief. *Id.* at 516.

Why, then, in 1992, must we search for a pre-*Curtis*, 1977 test by which to judge whether Sammy Naranjo's right to testify was violated, whereas in 1984 there was no need to search for a pre-*Curtis*, 1974 or 1981 test by which to judge whether Arthur Curtis' or Dennis Ray Jones' right to testify was violated? The majority does not say. Rather, the majority inexplicably, to my mind, transforms a case involving the right to testify into a case involving whether there was effective assistance of counsel, an approach entirely inconsistent with the part of *Curtis* that formulated and twice applied the legal norm for resolving a pre-*Curtis* violation of the right to testify.

### IV

The majority attempts to transform this case into a case concerning effective assistance of counsel by reformulating the defendant's claim as a claim that he was denied the right to testify as a result of ineffective assistance of counsel. *See infra* part IV A. This focuses attention on the often close causal connection between receiving ineffective assistance of counsel and being denied the right to testify, and also leads the majority to overlook and collapse the distinction between a test for the denial of the fundamental and personal constitutional right to testify and a test for the denial of the less specific right to effective assistance of counsel. *See infra* part IV B. Transforming this case into a case concerning effective assistance of counsel also has the effect of bringing the majority's opinion into line with precedent that it cites. *See infra* part IV C.

---

**8.** Indeed, Jones' trial took place in 1974, three years *before* the trial that we are considering in this case.

**9.** Much less were we led to "indulge a strong presumption that defense counsel's efforts constituted effective assistance," maj. op. at 325, which is to say, contrary to the majority's prescription, we were not led to indulge a strong presumption that Curtis' constitutional right had not been violated.

**10.** In contrast, the district court found that Sammy Naranjo "experiences difficulty in understanding the English language, especially where it becomes technical and he has no knowledge of legal or appellate principles," and that "[a]t the original trial, the Defendant was not advised of his right to testify and had no knowledge of it." Order on Mot. for Postconviction Relief, *People v. Naranjo* (Larimer County Dist.Ct. May 19, 1989) (No. 76CR7133).

**11.** *Cf. supra* note 9.

## A

The majority characterizes the defendant's claim as "the ... claim that his trial attorney did not adequately advise him of his right to testify and that as a result of ineffective assistance of counsel he did not understand and was deprived of his constitutional right to testify...." Maj. op. at 326. Later, the majority characterizes the defendant's claim more simply as that "he was denied his constitutional right to testify due to the failure of defense counsel to adequately advise him of that right." Id. at 326. In reviewing the record, I find no such claim.

First, in paragraph 7 of his Crim.P. 35(c) motion, the defendant asserts the following: "7. Defendant's comprehension of the English language was so deficient that (1) the trial proceedings were incomprehensible to him and he was unable to actively assist counsel during pretrial and trial proceedings, and (2) he did not understand that he had a constitutional right to testify at the suppression hearing or trial." Mot. for Postconviction Relief, People v. Naranjo (Larimer County Dist.Ct. Dec. 15, 1988) (No. 76CR7133). Here the defendant actually makes three claims, specifically, that the trial proceedings were incomprehensible to him, that he was unable to assist his attorney, and that he did not understand his right to testify. He does not claim, however, that because of ineffective assistance of counsel, he did not understand his right to testify; rather, he claims that because of his deficient comprehension of English, he did not understand his right to testify.[12]

Second, in its petition for certiorari, the People characterized the defendant's claim as the claim "that he did not understand that he had a constitutional right to testify at the suppression hearing or trial." Pet. for Writ of Cert. at 7, People v. Naranjo (Colo.Sup.Ct. Aug. 6, 1991) (No. 91SC473). Later, the People reiterated that "[t]he defendant simply stated regarding his right to testify that he did not understand that he had a constitutional right to testify at the suppression hearing or trial." Id. at 9. Accordingly, the People petitioned for, and were granted, certiorari on the following issues: "Whether the respondent was denied his constitutional right to testify at his 1977 jury trial and, if any error occurred, whether it is subject to harmless error analysis. Encompassed within the issues is the subsidiary issue of the harmlessness of any error beyond a reasonable doubt."

Finally, the defendant never asserted in his answer brief that his right to testify was violated because of ineffective assistance of counsel. On the contrary, the defendant relied on the fact that his trial attorney *did* act according to the professionally acceptable level of competence demanded of attorneys practicing in criminal law in 1977 when his attorney made the final decision for him on whether he would testify. Answer Br. of Respondent at 12, People v. Naranjo (Colo.Sup.Ct. Apr. 3, 1992) (No. 91SC473).[13] Thus, the record

---

12. Accordingly, at the hearing on Naranjo's Crim.P. 35(c) motion for postconviction relief, Naranjo's attorney stated that "in conjunction with the language issue, we will be presenting just a small amount of evidence on the issue of Mr. Naranjo's right to testify and it will be—we will address that issue as well. It's combined with the interpretation of the English language." Tr. at 13, People v. Naranjo (Larimer County Dist.Ct. Dec. 29, 1988) (No. 76CR7133). The court then asked whether the right to testify was a separate issue from the language issue. Id. Naranjo's attorney equivocated, saying both that the "Court could look at it" that way and that the right to testify issue was addressed in "No. 7 of my motion for post-conviction relief; No. 7, Subsection 2." Id.

13. The defendant argues in his answer brief:

Although he [i.e., the defendant] wanted to "get up on the stand," he was unaware that he could override his attorney's choice in the matter. Mr. Naranjo's trial attorney, Arnaud Newton (now a district court judge in Larimer County), did not recall whether he had advised Mr. Naranjo that the decision to testify was his personal right. However, Judge Newton testified that at the time of trial, under the standard of practice effective in 1977, the decision was a tactical one to be made by defense counsel after consultation with his client. Judge Newton acknowledged that Mr. Naranjo wanted to testify at trial. Finally, although he could not recall whether Mr. Naranjo had joined in his decision, Judge Newton admitted that *he* had made the decision that Mr. Naranjo would not testify at trial. Id. (references to record omitted).

nowhere supports the majority's contention that the defendant is claiming that he was denied the right to testify because of ineffective assistance of counsel.

## B

One effect of the reformulation of the defendant's claim is to focus attention on the usually close causal connection between receiving ineffective assistance of counsel and being denied the right to testify. This apparently leads the majority to overlook the distinction between a test for a cause—i.e., a test for ineffective assistance of counsel—and a test for its effect—i.e., denial of the right to testify. Nevertheless, there is no necessary connection between the fact that a defendant did not understand that he had a right to testify, and the fact that the defendant had ineffective assistance of counsel, and hence, a test for the latter is not a sufficient test for the former. Indeed, by remanding this case for further proceedings, the majority implicitly relies on this very point that there is no necessary connection between the two, which is to say, without challenging the district court's finding that Naranjo had no knowledge that he had a right to testify, the majority nevertheless remands on the possibility that Naranjo received effective assistance of counsel. According to the majority, therefore, Naranjo may have received effective assistance of counsel even without understanding that he had a right to testify, and this is consistent with the majority's view that in determining whether a defendant's pre-*Curtis* right to testify was violated, the legally dispositive factor is not whether the defendant comprehended and effectively waived his right to testify, but whether the performance of the defendant's attorney measured up to the professional level of competence demanded of attorneys practicing in criminal law at the time of the defendant's trial. *See* maj. op. at 325. Consequently, not only does the majority mischaracterize Naranjo's claim as the claim that he was denied his right to testify because of ineffective assistance of counsel, but by collapsing the distinction between a test for effective assistance of counsel and a test for the denial of the right to testify, the majority also appears implicitly to hold that, for pre-*Curtis* trials, whether criminal defendants understood they had a right to testify, or even significantly participated in a decision not to testify, is not necessarily important in determining whether they were denied the right to testify.[14]

## C

By reformulating the defendant's claim the majority also brings its opinion into line with the only case it cites in which an alleged denial of a defendant's fundamental constitutional right to testify is analyzed in terms of whether that defendant was denied effective assistance of counsel. That case is *United States v. Teague,* 953 F.2d 1525 (11th Cir.1992) (en banc). *See* maj. op. at 324. In *Teague,* the defendant claimed "that he was prevented from testifying ... *by his own lawyer,*" *Teague,* 953 F.2d at 1531 (emphasis added), and the court reasoned that "[w]here the defendant claims a violation of his right to testify *by defense counsel,* the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Id.* at 1534 (emphasis added). The court thereupon concluded:

> In summary, we hold that a criminal defendant has a fundamental constitutional right to testify on his behalf, that this right is personal to the defendant, and that the right cannot be waived by defense counsel. *Where the defendant claims that this right was violated by defense counsel,* this claim is properly framed as a claim of ineffective assistance of counsel.

**14.** Indeed, if Judge Newton is correct in his testimony that the state of practice in 1977 in the defense of a criminally accused was that the decision to testify was a tactical one made by the attorney, then defendants like Naranjo are in the peculiar, even paradoxical situation of having waived to the complete satisfaction of the law their constitutional right to testify without ever having understood that they had a right to testify, and even though they wanted to testify and did not significantly participate in the decision not to testify.

*Id.* at 1535 (emphasis added). *Teague* therefore stands for the proposition that if a defendant claims he was denied the right to testify *by his attorney*, then that claim is properly framed as a claim of ineffective assistance of counsel. By recasting Naranjo's claim as a claim that he was denied the right to testify because his attorney did not adequately advise him, the majority therefore brings its opinion into line with *Teague;* nevertheless, the fact remains that Naranjo does not claim that he was denied the right to testify because of deficient performance of counsel. Rather, he claims that regardless of whether his attorney performed up to the level of competency demanded of attorneys in 1977, he simply did not comprehend that he had a right to testify. *Cf. Hill v. Lockhart,* 474 U.S. 52, 54–55, 57, 106 S.Ct. 366, 368, 369, 88 L.Ed.2d 203 (1985) (cited by the majority and holding that if the defendant claims that his guilty plea was constitutionally infirm *because his attorney misinformed him* about his parole eligibility date, then such claim is properly framed as a claim of ineffective assistance of counsel); *People v. Pozo,* 746 P.2d 523, 525, 526 (Colo.1987) (cited by the majority and holding that if the defendant claims that his guilty plea was constitutionally infirm *because his attorney failed to inform him* of the possible deportation consequences of pleading guilty, then such claim is properly framed as a claim of ineffective assistance of counsel).

Other cases cited by the majority are even less on point. For example, several cases involve only the right to effective assistance of counsel completely apart from any right to testify. *See Strickland v. Washington,* 466 U.S. 668, 675, 104 S.Ct. 2052, 2058, 80 L.Ed.2d 674 (1984) (the defendant "asserted that counsel was ineffective because he failed to move for a continuance to prepare for sentencing, to request a psychiatric report, to investigate and present character witnesses, to seek a presentence investigation report, to present meaningful arguments to the sentencing judge, and to investigate the medical examiner's reports or cross-examine the medical experts"); *Smith v. Black,* 904 F.2d 950, 974, 978 (5th Cir.1990) (the defendant asserted counsel was ineffective because of his lack of investigation, failure to protect the defendant's Fifth Amendment rights while the defendant testified at a suppression hearing, lack of preparation for expert testimony, failure to rehabilitate jurors opposed to the death sentence, allowing the defendant to be dressed in prison garb during trial, failure to present mitigating evidence, and failure to object or preserve errors for review); *United States ex rel. Weismiller v. Lane,* 815 F.2d 1106, 1108–09 (7th Cir.1987) (the defendant asserted counsel was ineffective because counsel failed to object to jury instructions); *Adams v. Wainwright,* 804 F.2d 1526, 1528 (11th Cir. 1986) (the defendant asserted counsel was ineffective because counsel failed to provide the defendant with a competent psychiatric examination, failed to challenge the voluntariness of his confession, and failed to consult a pathologist to rebut the state's expert testimony); *People v. Drake,* 785 P.2d 1257, 1272 (Colo.1990) (the defendant asserted counsel was ineffective because of counsel's failure to object to a hearsay statement and failure to file a motion for acquittal when counsel filed a similar motion on behalf of a co-defendant); *Steward v. People,* 179 Colo. 31, 33, 498 P.2d 933, 934 (1972) (the defendant asserted counsel was ineffective because counsel permitted cross-examination on previous felony convictions without a prior foundation that would establish that the defendant had counsel at the time that he was convicted and because counsel failed to present certain evidence which the defendant characterized as newly discovered); *Martinez v. People,* 173 Colo. 515, 517, 480 P.2d 843, 844 (1971) (the defendant asserted counsel was ineffective because counsel refused "to subpoena some thirteen additional witnesses that could help establish the defendant's whereabouts at the time of the alleged crime").[15] Still others involve a right

**15.** Other than in dicta, the court in *Hudgins v. United States,* 340 F.2d 391 (3rd Cir.1965), cited by the majority on page 9 of its opinion, did not reach the issue of the competency of defense

to testify, but such a right is generally not distinguished from other rights such as the right to have one's counsel file a motion for severance, *see Hayes v. Russell*, 405 F.2d 859, 860 (6th Cir.1969), the right to have a specific other witness called by one's attorney, *see United States v. Garguilo*, 324 F.2d 795, 796 (2nd Cir.1963), or the right to have one's attorney conduct an adequate cross-examination. *Id.*[16] Moreover, the actual test applied by the federal cases cited prior to *Strickland* was whether what the attorney did "made the proceedings a farce and a mockery of justice." *Hayes*, 405 F.2d at 860; *accord Garguilo*, 324 F.2d at 796; *cf. Steward*, 179 Colo. at 34, 498 P.2d at 934 (ineffective assistance of counsel is to be evaluated by bad faith, sham, or farcical representation tests); *Martinez*, 173 Colo. at 520, 480 P.2d at 845 (same). All of this is a long way from *Curtis*, which controls in this case, and which directs courts, even retrospectively, to determine whether a defendant's *constitutional* right to testify was voluntarily, knowingly, and intentionally waived. *Curtis*, 681 P.2d at 517.[17]

### V

The necessary implication of the majority's remand of this case is that the defendant may have waived his right to testify without knowing that he had such right, without testifying, and while wanting to testify despite his attorney's final "tactical" decision that he would not. This seems further to imply that in 1977 the defendant had no fundamental, personal, constitutional right to testify on his behalf at trial, and this is contrary to the portion of *Curtis* that both formulated and twice applied the standard for reviewing alleged pre-*Curtis* violations of the right to testify. The majority may therefore think that the *Curtis* standard for reviewing alleged pre-*Curtis* violations of the right to testify has become "a significant burden on the administration of justice," *Curtis*, 681 P.2d at 517, as would have been the retroactive application of *Curtis'* newly announced procedural safeguards. *Id.* I do not know. I do know, however, that the record before us discloses nothing to indicate that *Curtis* has become in the previous eight years a significant burden on the administration of justice. In addition, although this court is not strictly bound by its own precedents, I am not "clearly convinced that the rule [in *Curtis* ] was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." John Hanna, *The Role of Precedent in Judicial Decision*, 2 Vill.L.Rev. 367, 368 (1957) (reporting that absent such clear findings, "[t]he general American doctrine as applied to courts of last resort is that a court ... will follow the rule of law which it has established in earlier cases"). Accordingly, I would affirm the judgment of the Colorado Court of Appeals affirming in turn the district court's order granting the defen-

counsel ·because that issue was "not properly raised on the present record." *Id.* at 396.

**16.** Because the United States Supreme Court did not expressly enunciate the constitutional origins of the right to testify until 1987, *see Rock*, 483 U.S. at 51–53, 107 S.Ct. at 2708–10; *Teague*, 953 F.2d at 1530, it is not surprising that these pre-*Curtis*, federal cases do not distinguish the right to testify as a specific constitutional right apart from other rights. *Cf. Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972) (stating that the decision to testify is a matter of constitutional right, but recognizing also that the decision is a tactical one to be made by "the accused *and* his lawyer") (emphasis added); *Ferguson v. Georgia*, 365 U.S. 570, 596, 81 S.Ct. 756, 770, 5 L.Ed.2d 783 (1961) (invalidating a statutorily prescribed procedure denying a person accused of a crime the right to have his counsel question him to elicit his statutorily permitted unsworn statement and carefully limiting its holding to grounds other than a recognition of a constitutional right to testify). In contrast, this court expressly recognized that the right to testify is constitutional at least as early as 1978, *see People v. Henry*, 195 Colo. 309, 315, 578 P.2d 1041, 1045 (1978), *appeal dismissed*, 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978), and this was two years before we issued our first decision in *Naranjo*. *See People v. Naranjo*, 200 Colo. 1, 612 P.2d 1099 (1980).

**17.** *Hayes v. Russell*, 405 F.2d 859 (6th Cir.1969), cited by the majority on page 323 of its opinion, is so far contrary to the views expressed in *Curtis* that *Hayes* is itself cited in *Curtis* as contrary authority to the proposition that there even exists a constitutional right to testify. *Curtis*, 681 P.2d at 510 n. 5.

dant's Crim.P. 35(c) motion and awarding him a new trial.