461 P.2d 126

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Glenn C. MAY, Defendant-Appellant.**

**No. 10169.**

Supreme Court of Idaho.

Nov. 13, 1969.

344

Kerr & Williams, Blackfoot, for defendant-appellant.

Robert M. Robson, Atty. Gen., Mack A. Redford, Deputy Atty. Gen., Boise, and Thomas E. Moss, Pros. Atty., Blackfoot, for plaintiff-respondent.

McQUADE, Justice.

The defendant-appellant, Glenn C. May found himself in need of money in the early part of June, 1964. In an effort to assuage that difficulty, he approached Brigham Horrocks for the purpose of obtaining a loan. Horrocks, the complaining witness, had lent money to the appellant on prior occasions, but he at first refused May's entreaty. The next day, however, Horrocks relented and, on the appellant's suggestion, told May that he would lend the money provided that he obtain his father as a co-signer on a note which Horrocks prepared. May then went to his father's ranch to obtain his father's signature on the note. Upon reaching his father's ranch and finding him not there, appellant then signed his father's name to the note, copying his father's handwriting in an effort to make the signature appear authentic. Although May's father had previously co-signed several notes, he had never given permission or authority for appellant to sign his name for him. Appellant's father had been obliged to pay on the last note

which he had cosigned with the appellant, and had counseled Glenn against getting too far into debt.

The next day, June 9, 1964, the appellant presented the $4,000 note to Horrocks, bearing his own signaure and the "copy" of his father's signature, whereupon the complaining witness gave the appellant a check for $4,000.

Three years later, upon Horrock's complaint, appellant was charged upon information of the acts of "uttering and passing" and "forging" the note with intent to defraud under I.C. § 18–3601 and on September 18 and 19, 1967, he was tried before a jury and convicted of that charge. On November 28, 1967, District Judge Boyd R. Thomas, sitting in the place of the late Judge Paul Crane who had tried the case, pronounced sentence upon the defendant. From that conviction and sentence appellant prosecutes this appeal.

The defendant presents this Court with twenty-seven assignments of error. The principal complaint throughout this lengthy bill of particulars is that appellant was never proved to have the intent to defraud which is a necessary element of the crime of forgery.[1] It is not entirely clear what the appellant understands to be comprehended by the requirement of this special intent. He argues, for instance, that he should have been able to prove his financial condition at the time of the forgery. It is difficult to understand how this may have tended to prove a lack of a specific intent to defraud. An impecunious forger is no less a forger merely because of his poverty.[2] He also argues that he had no intention to defraud either Horrocks or his own father because he intended to pay the money back. And he further contends that he had no intention to defraud because he honestly thought that his father would ratify his "copied" signature and stand behind him on

---

1. I.C. § 18–3601. *See also* 2 R. Anderson, Wharton's Criminal Law and Procedure §§ 621, 623, 649, at 396, 397, 440 (1957); R. Perkins, Criminal Law 339–341, 352–354. (2nd ed. 1969).

2. *See* Tacoronte v. United States, 323 F. 2d 772 (10th Cir. 1963); State v. Christopherson, 36 Wis.2d 574, 153 N.W.2d 631 (1967).

the debt. These contentions evidence a profound confusion as to the quality of the intent which is necessary for conviction of forgery under our statutes. The "intent to defraud" required by I.C. § 18–3601 is simply a purpose to use a false writing as if it were genuine in order to gain some advantage, generally at someone else's expense.[3] It, thus, does not matter that the defendant meant to repay the loan or thought that his father would stand by him. As Professor Perkins says, in the most recent edition of his treatise on criminal law,

"The actual accomplishment of fraud is not a necessary element of forgery, and the intent itself does not require the contemplation of inflicting a monetary loss. * * * An intent to use a false writing to gain some advantage is an intent to defraud even if the wrongdoer has an intent to make reparation at some future time. Thus, it is no defense to a charge of forging a promissory note that the forger intended to take up the paper at maturity, or even that he has actually done so. And an intent to use an instrument to which the signature of another is wrongfully attached is fraudulent even if that other actually owes the forger the amount of money represented and this is merely a device used to collect the debt. These results are necessary because the social interest in the integrity of instruments is violated by the use of false writings, even under these circumstances. Furthermore, a false writing has such an obvious tendency to accomplish fraud that the jury is warranted in inferring such an intent from the mere creation of an instrument that is false, or the alteration which changes a genuine writing into a false one, unless some adequate explanation is offered * * *.

"The fact that the one whose name was forged is willing to condone the offense and pay the obligation is no defense to forgery." [4]

The jury is, of course the final arbiter of the facts, and we cannot, as a matter of law, hold that the jury in this case could not have found beyond a reasonable doubt that the defendant had the requisite intent when he forged and uttered the note in 1964.[5]

■ Appellant, as his twenty-fourth assignment of error, challenges the trial court's instruction no. 16,

"If you find from the evidence beyond a reasonable doubt that the promissory note in evidence before you, as Exhibit 'A', was forged and counterfeited on or about the 8th day of June, 1964, and that the defendant had the promissory note in his possession on that day and passed it to Mr. Brig Horrocks as genuine and true, then such possession and passing of the promissory note are incriminating circumstances tending to show that the defendant either forged the promissory note or knew that it had been forged, unless the evidence satisfactorily explains the possession and passing of the promissory note by the defendant, if you find that he did possess and pass the promissory note."

This instruction appears manifestly to be a correct statement of the law. It has been held in this state,[6] and in others,[7] that a person possessing a recently forged document, or passing it, is presumed either to have forged it or to have the necessary intention to defraud. This is a rebuttable presumption, but it does shift the burden to

---

3. *Accord,* cases cited *supra* n. 2; People v. Gill, 8 Mich.App. 89, 153 N.W.2d 678 (1967).

4. R. Perkins, *supra* n. 1, at 353–354.

5. *See* State v. Booton, 85 Idaho 51, 375 P.2d 536 (1962) (this writer dissented from that opinion, but on another

ground.) ; *see also,* State v. Christopherson, *supra* n. 2.

6. State v. Booton, *supra* n. 5; State v. Allen, 53 Idaho 737, 27 P.2d 482 (1933).

7. State v. Christopherson, *supra* n. 2; People v. Gill, *supra* n. 3; People v. Geibel, 93 Cal.App.2d 147, 208 P.2d 743 (1949).

the defendant to explain his incriminating conduct. We can see no reason to upset this well established rule of evidence.

■ The appellant's 18th, 19th, 21st, 22nd, and 23rd assignments of error are predicated upon an erroneous concept of the jurisdiction of the district court. It is appellant's contention that, because the appellant's father's ranch, where the signature was "copied," was in Dubois, Clark County, and not in Bingham County, Idaho, the trial court had no jurisdiction to try the issue of the "forging." Appellant concludes, therefore, that any instruction which allowed the jury to convict the appellant for acts other than that of "uttering" the forged note were erroneous. This contention overlooks I.C. § 19–304,

"*Offenses committed in different counties.*—When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county. [Cr.Prac.1864, § 84; R.S., R.C., & C.L., § 7483; C.S., § 8688; I.C.A. § 19–304.]"

The crime of forgery in this state includes both the act of forging the handwriting of another and the act of uttering "as true and genuine" any forged writing "knowing the same to be * * * forged * * *, with intent to prejudice, damage, or defraud any person." The appellant in this case was tried on information that he had both forged and uttered, two acts which constitutes the same crime in the State of Idaho. One of the acts, that of uttering the forged note, occurred in Bingham County. The district court sitting in Bingham County, therefore, did have jurisdiction over the entire crime under I.C. § 19–304.

■ The appellant's twelfth assignment of error reads:

"The Court erred in allowing the Prosecuting Attorney to recall the complaining witness on rebuttal and ask him questions about the present reputation of the defendant in the community. * * * The defendant had not resided in the community since the year 1964."

Section R9–1209 of the Idaho Code permits impeachment of a witness by an adverse party by evidence that the witness' "general reputation for truth, honesty or integrity is bad." The testimony of which the appellant complains in this assignment of error would clearly be acceptable under that rule if it were not for the lapse of three years during which the appellant did not live in the community to which the witness referred. The late Professor Charles T. McCormick in his Handbook of the Law of Evidence offers a "practical solution" to this sort of problem. That is "to permit testimony as to reputation (which is usually a settled continuing condition) as of any time before trial which the judge in his discretion finds is not too remote to be significant."[8] The appellant lived in the community to which the witness had reference from 1951 to 1964, a period of thirteen years. We recognize that reputation, and the character traits of which it is evidence, are indeed usually settled continuing conditions, and we cannot hold that the trial judge abused his discretion in allowing testimony as to a reputation which was only three years old in this case. The facts that the plaintiff had not lived in the community for three years and that the testimony was given by the complaining witness are merely matters of credibility, which are best decided by the jury.

■ Appellant's twenty-fifth assignment of error alleges that the sentence which he received in this instance is too harsh. The appellant was sentenced to spend sixty days in the Bingham County jail, and then to be placed on probation for two years, less the sixty days. One condition of the probation was that he should make restitution to the complaining witness "in the amount of $4,000 plus interest at the rate of eight per

8. C. McCormick, Handbook of the Law of Evidence 96 (1954).

cent from June 8, 1964, to be paid as specified by the probation officer." And the trial court also suggested that the appellant not be employed in a selling capacity during the term of the probation. The appellant, in his brief, claims that the only experience or skill which he has is that of a salesman. And he further contends that, if he has to pay off the entire $4,000 debt in this two-year probationary period, he will have to make payments in excess of $250 per month. He claims that he will be unable to make these payments and to support his wife and children (also a condition of the probation), especially if he is unable to work in a selling occupation. We have recently held [9] that a trial court cannot impose impossible conditions on a probation. But that holding is not appropriate in this case. We cannot say that, in fact, the otherwise proper condition that the appellant make restitution will, under the instructions of the probation officer, prove to be an impossible burden. If, in the future, such should actually happen to be the case, the appellant will of course, be able to petition the district court for leniency. At that time he may make such factual representations as are necessary. At this time, however, the question of the severity of this probation order is not properly before this Court.

We have examined the remainder of the appellant's assignments of error, and, while they are strenuously argued, we hold them to be without merit.

The judgment and sentence of the district court is affirmed.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and HAGAN, District Judge, concur.

9. State v. Oyler, 92 Idaho 43, 436 P.2d 709 (1968).