**STATE of Utah, Plaintiff and Appellee,**

v.

**Ana Lilia GONZALEZ, Defendant and Appellant.**

**No. 900552–CA.**

Court of Appeals of Utah.

Dec. 4, 1991.

Lisa J. Remal and Ronald S. Fujino (argued), Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## AMENDED OPINION [1]

RUSSON, Judge:

Ana Lilia Gonzalez appeals her conviction of forgery, a second degree felony, in violation of Utah Code Ann. § 76-6-501 (1990). We affirm.

## FACTS

On January 21, 1991, Gonzalez went to a Smith's Food and Drug Center in Salt Lake City with four other people. Although Gonzalez did not select anything for herself, the group filled a shopping cart with make-up, body building vitamins, and other expensive items totaling $268.28. Gonzalez wrote and presented a check for $300, writing in the amount, "Smith's" as the payee, and the signature of Christie Cotner, the name on the check. Gonzalez also presented a Smith's check-cashing card and a VISA check guarantee card, both bearing Cotner's name. Because of the large amount of the check and the nature of the items, the assistant manager was called to verify the check. He called the phone number listed on the check, and reaching Cotner's residence, was told that the checkbook had been stolen the day before when Cotner was shopping in West Valley City. The assistant manager called the police, and upon arrival, an officer interviewed and arrested Gonzalez, charging her with forgery, a second degree felony.

At trial, Gonzalez testified as follows: At a party on January 20, she heard Shannon (or Sherry) O'Neill boast that her sister allowed O'Neill to use her checkbook on a loan-type basis. At that party, Gonzalez

loaned O'Neill "a couple of bucks" with the intention of returning the next day for the money. The next day O'Neill, who did not have enough cash to repay Gonzalez, asked Gonzalez to buy her some groceries and write the check to cover the cost of the groceries, plus the amount owed. Gonzalez thought nothing of using another's checkbook because she had, with permission, used her mother's in the past. In addition to Cotner's checkbook, O'Neill gave Cotner's VISA check guarantee card and Smith's check-cashing card to Gonzalez. Gonzalez then went with four of O'Neill's friends to Smith's.

Additionally at trial, the court received, over Gonzalez's objection, the entire checkbook offered by the State as evidence of Gonzalez's culpable state of mind. The trial court also sustained the State's objection to testimony offered to corroborate Gonzalez's testimony as to O'Neill's statement about purporting to have her sister's authority to use the checkbook. Gonzalez was subsequently tried and convicted of forgery.

## ISSUES

Gonzalez appeals that conviction, raising the following issues: (1) Was the evidence at trial sufficient to show that she acted with purpose to defraud? (2) Did the trial court abuse its discretion in prohibiting testimony corroborative of her testimony of her lack of intent to defraud? (3) Did the trial court abuse its discretion in admitting the entire checkbook from which she wrote the check? (4) Did the trial court err in refusing her proposed jury instruction on reasonable doubt?

## I. SUFFICIENCY OF THE EVIDENCE

Gonzalez first asserts that the State did not present sufficient evidence to convict her of forgery because it failed to prove her purpose to defraud. We review the evidence in a light most favorable to the jury's verdict. *State v. Johnson*, 784

---

1. This opinion replaces the opinion of the same name issued October 18, 1991 (172 Utah Adv. Rep. 22).

P.2d 1135, 1138 (Utah 1989). We reverse a conviction only when "the evidence and its inferences are so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which [she] was convicted." *State v. Moore,* 802 P.2d 732, 738 (Utah App.1989) (quotation omitted).

Utah Code Ann. § 76–6–501 (1990) reads, in pertinent part:

> (1) A person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud be perpetrated by anyone, he:

> .     .     .

> (b) Makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another....

In accordance with the said statute, the Utah Supreme Court has stated that in order to prove forgery, "the state must show that the defendant not only used the name of another, but must also show that [she] did so without any authority to do so." *State v. Collins,* 597 P.2d 1317, 1317 (Utah 1979).

Utah courts have yet to define the term "purpose to defraud," but the Idaho Supreme Court has stated that " 'intent to defraud' ... is simply a purpose to use a false writing as if it were genuine in order to gain some advantage[.]" *State v. May,* 93 Idaho 343, 461 P.2d 126, 128 (1969) (citations omitted). That court went on to state that "a false writing has such an obvious tendency to accomplish fraud that the jury is warranted in inferring such an intent from the mere creation of an instrument that is false." *Id.* (citation omitted).

■ Viewed in the light most favorable to the jury's verdict, the evidence was not so inconclusive that reasonable minds must have entertained a reasonable doubt as to Gonzalez's guilt. Indeed, Gonzalez's actions meet all of the requirements of forgery. By filling in the check, signing Cotner's name, and presenting Cotner's VISA check guarantee and Smith's check-cashing cards, Gonzalez completed the writing of the check while purporting to be Cotner. Gonzalez did this without any authority from Cotner. It does not matter that Gonzalez thought that she had authority from O'Neill. It is well established that one needs the authority of the person whose name is signed. *See State v. Jones,* 81 Utah 503, 20 P.2d 614, 617 (1933). It follows, therefore, that O'Neill could not confer valid authority to Gonzalez to sign Cotner's name.

■ Moreover, we hold that the act of completing the check implies a purpose to defraud. *See May,* 461 P.2d at 128. Gonzalez proffered the check to Smith's as if it were genuine and would have gained the extra cash beyond the purchase price if she had not been apprehended. Furthermore, the others shopping with Gonzalez would have gained the advantage of the purchase as a result of Gonzalez's act. Accordingly, we conclude that there was sufficient evidence to find Gonzalez guilty of forgery.

## II.  EXCLUSION OF TESTIMONY

■ Gonzalez next contends that the trial court erred by prohibiting testimony corroborative of her own testimony of her lack of intent to defraud. Specifically, Gonzalez sought to present testimony that another person heard O'Neill boast that her sister allowed O'Neill to use her checkbook on a loan-type basis. Whether certain evidence is relevant, and therefore admissible, is a question of law, which we review under a correction-of-error standard. *See State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991).

■ In support of her argument that such testimony should have been admitted, Gonzalez relies on a case from the Court of Appeals for the Eleventh Circuit which approved the admission of hearsay evidence to establish a defendant's reliance on the advice of counsel. *United States v. Eisenstein,* 731 F.2d 1540 (11th Cir.1984). In *Eisenstein,* the trial court excluded the testimony of the defendants' attorney, offered

to prove that the defendants had given full disclosure to the attorney and relied on the subsequent advice. The court of appeals reversed, narrowly holding that such exclusion was improper because "it was *necessarily relevant* for the lawyer to tell the jury the nature of the enterprise presented to him by [defendants] and upon which he gave his advice." *Id.* at 1546 (emphasis in original).

Here, the evidence which Gonzalez sought to present is wholly irrelevant to the disposition of the case. Thus, *Eisenstein* is inapplicable to the case at bar. The sole purpose of the excluded testimony was that another person who attended the party had heard O'Neill's statement about her own use of the checkbook. Since O'Neill could not confer valid authority to Gonzalez to sign Cotner's name, the excluded testimony had no probative value as to Gonzalez's authority to use Cotner's checkbook. Accordingly, we conclude that the trial court did not err in prohibiting the said testimony.

### III. ADMISSION OF EVIDENCE

■ Over Gonzalez's objection, the trial court admitted the entire checkbook from which Gonzalez wrote the check in question. Gonzalez argues that the checkbook is irrelevant, and thus, this admission was reversible error, under Utah Rule of Evidence 402, which states that "evidence which is not relevant is not admissible at trial." Again, we review the trial court's ruling as to admissibility of evidence under a correctness standard. *State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991).

This court has previously held that "'where evidence [is] shown to have supported only conjectural inferences which had little probative value' ... reversal may be appropriate on 'grounds that the improperly admitted evidence could only have served to confuse and mislead the jury or prejudice the outcome of the case.'" *State v. DeAlo,* 748 P.2d 194, 199 (Utah App. 1987) (quoting *Pearce v. Wistisen,* 701 P.2d 489, 491–92 (Utah 1985)). Gonzalez contends that because she was not charged with any offense other than forgery of the single check, the rest of the checkbook has no probative value and only served to confuse and mislead the jury. We disagree.

The Utah Supreme Court has stated that "if the evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose." *State v. Daniels,* 584 P.2d 880, 882 (Utah 1978). The court has also held that intent "may be inferred from the actions of the defendant or from surrounding circumstances." *State v. Murphy,* 674 P.2d 1220, 1223 (Utah 1983) (citations omitted).

In the case at bar, Gonzalez's claim that admission of the checkbook only served to mislead or confuse the jury is insupportable because the prosecution made it clear in closing argument that Gonzalez was only being charged with the one act of forgery. Secondly, the checkbook is relevant to the single count of forgery as indirect evidence explaining the circumstances surrounding the crime. Thirdly, it is probative of Gonzalez's intent to defraud. Therefore, we hold that the trial court did not err in admitting the entire checkbook.

### IV. REASONABLE DOUBT INSTRUCTION

■ Lastly, Gonzalez claims that the trial court erred by refusing her proposed jury instruction on reasonable doubt. "An appeal challenging the refusal to give a jury instruction presents a question of law only. Therefore, ... [we show] no particular deference to the trial court's ruling." *State v. Pedersen,* 802 P.2d 1328, 1331 (Utah App.1990), *cert. denied,* 815 P.2d 241 (1991).

This court has recently considered the very instruction given by the trial court, and determined that it was an appropriate definition of reasonable doubt. *See Pedersen,* 802 P.2d at 1331–32. Gonzalez, however, argues that the recent United States Supreme Court decision in *Cage v. Louisiana,* 498 U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam) invalidates our prior ruling because of the similarities in the two instructions in question. We disagree.

In *Cage,* the Court acknowledged that the "reasonable doubt standard 'plays a vital role in the American scheme of criminal procedure.' Among other things, 'it is a prime instrument for reducing the risk of convictions resting on factual error.'" *Id.,* 498 U.S. at ——, 111 S.Ct. at 329 (quoting *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)). Accordingly, the Supreme Court reasoned that in "construing the [reasonable doubt] instruction, we consider how reasonable jurors could have understood the charge as a whole." *Id.,* 498 U.S. at ——, 111 S.Ct. at 329 (citing *Francis v. Franklin,* 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985)).

■ Comparing *Cage* to the present case, we determine that the instruction in question is sufficiently different from the one rejected in *Cage,* and therefore it remains an adequate definition of reasonable doubt. In *Cage,* the Supreme Court questioned the phrases "substantial doubt," "grave uncertainty," and "moral certainty" contained in the reasonable doubt instruction. The Court ruled that these phrases could allow "a reasonable juror [to interpret] the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.,* 498 U.S. at ——, 111 S.Ct. at 330. The instruction in the case at bar has no such language. Any similarities[2] between the two instructions were not questioned by the Supreme Court. Thus, *Cage* has no applicability to the instruction in *Pedersen,* nor to the instruction given here. Therefore, we "need not consider whether [Gonzalez's] proposed instruction might also have been proper or even preferable." *Pedersen,* 802 P.2d at 1331–32.

## CONCLUSION

In conclusion, we hold that: (1) the evidence at trial was sufficient to show that Gonzalez acted with purpose to defraud; (2) the trial court did not abuse its discre-

tion in prohibiting testimony corroborative of Gonzalez's testimony of her lack of intent to defraud, nor in admitting the entire checkbook from which Gonzalez wrote the check; and (3) the trial court properly refused Gonzalez's jury instruction on reasonable doubt. Accordingly, we affirm.

BILLINGS and ORME, JJ., concur.

---

**2.** Gonzalez argues that the *Cage* instruction and the *Pedersen* instruction are similar because both have a presumption of innocence clause, both mandate acquittal if the State fails to meet its burden of proof, both require doubt to be

reasonable, and neither requires proof to an absolute certainty. However, these similarities are not questioned by the Supreme Court, and are wholly appropriate for a reasonable doubt instruction. *See Pedersen,* 802 P.2d at 1331–32.