STATE of Utah, Plaintiff and Appellee,

v.

Robert V. ARGUELLES, Defendant
and Appellant.

No. 930036.

Supreme Court of Utah.

July 12, 1996.

Jan Graham, Atty. Gen., J. Frederic Voros, Jr., Asst. Atty. Gen., Charles D. Behrens, Salt Lake City, for plaintiff.

Ronald S. Fujino, Salt Lake City, for defendant.

ZIMMERMAN, Chief Justice:

Roberto V. Arguelles appeals his conviction of two first degree felony counts of aggravated sexual abuse of a child. We affirm.

On the afternoon of August 1, 1992, a ten-year-old girl and her eight-year-old brother were playing outside at their elementary school when a man approached them claiming to be a school security guard. The man explained that he was investigating a report of a broken window and asked the children to accompany him to the back of the school. There the man said, "Well, I don't see any broken windows, so I'll have to frisk you to make sure that you didn't steal anything." The man proceeded to "frisk" the children both outside and inside their clothes and touched their "private parts." Then the man said, "You are okay, I guess. You are okay." The children ran home and reported the crime to their parents, who then called the police.

Arguelles was arrested approximately one week later, after the children separately identified him in a police photo array as the man who had accosted them behind the elementary school. Because the incident involved two victims and because Arguelles

had previously been convicted of aggravated sexual·assault and attempted capital homicide, both first degree felonies, he was charged with two counts of aggravated sexual abuse of a child in violation of section 76–5–404.1 of the Utah Code.[1] After a two-day jury trial, Arguelles was convicted as charged and sentenced to two consecutive minimum mandatory prison terms of nine years to life.

Arguelles appeals, contending that he is entitled to a new trial because (i) his trial counsel was constitutionally ineffective in advising Arguelles not to testify in his own behalf; (ii) the trial court erred in refusing to excuse a biased juror for cause; (iii) the trial court erred in sustaining the State's hearsay objection to testimony about out-of-court statements offered in support of Arguelles' defense; and (iv) the trial court's definition of the "beyond-a-reasonable-doubt" standard in its instructions to the jury was inadequate. All of these arguments raise questions of law which we review for correctness. *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). We address Arguelles' arguments in order.

Arguelles first contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel.[2] He claims that he waived his right to testify in reliance on his counsel's advice which, in turn, was premised on the mistaken belief that if Arguelles were to testify, the prosecution would be entitled to impeach him with evidence of his prior conviction for aggravat-

---

1. The version of section 76–5–404.1 applicable to this case provides in relevant part:

    (1) A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

    . . . .

    (3) A person commits aggravated sexual abuse of a child when in conjunction with. the offense described in Subsection (1) any of the

following circumstances have been charged and admitted or found true in the action for the offense:

    . . . .

    (e) The accused, prior to sentencing for this offense, was previously convicted of any felony, or of a misdemeanor involving a sexual offense.
    (f) The accused committed the same or similar sexual act upon two or more victims at the same time or during the same course of conduct.

Utah Code Ann. § 76–5–404.1 (1995).

2. We analyze Arguelles' claim of ineffective assistance of counsel only under the United States Constitution because he has not raised a similar argument under the Utah Constitution. *See State v. Hovater,* 914 P.2d 37, 39 n. 1 (Utah 1996).

ed sexual assault.[3] In determining whether Arguelles' counsel was constitutionally ineffective, we apply the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Taylor v. Warden,* 905 P.2d 277, 282 (Utah 1995); *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994).

"To prevail [on a claim of ineffective assistance of counsel], a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant."

*Parsons,* 871 P.2d at 521 (quoting *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988)). Unless Arguelles has demonstrated that he was prejudiced by his trial counsel's performance, we need not decide whether that performance was deficient. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); *accord Parsons,* 871 P.2d at 523.

■ To show prejudice under the second prong of the *Strickland* test, "a defendant must proffer sufficient evidence to support 'a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.' " *Parsons,* 871 P.2d at 522 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Templin,* 805 P.2d 182, 187 (Utah 1990) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Under this standard, Arguelles bears the burden of demonstrating a reasonable probability that he would not have been convicted absent his counsel's advice not to testify. We conclude that Arguelles has not met this burden.

Arguelles argues that he relied on his counsel's advice in deciding not to testify and that his failure to testify was prejudicial because he "was the lone witness who could definitively explain what he was doing before, during, and after the time in question" and cites *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987), for the proposition that "the most important witness for the defense in many criminal cases is the defendant himself." (Emphasis omitted.) However, beyond these general and conclusory statements in Arguelles' brief, he has not proffered any record evidence which undermines our confidence in his conviction. Although Arguelles now claims that he relied on his counsel's advice in deciding not to testify, we find nothing in the record which suggests that Arguelles would have decided to testify in the absence of that advice. Moreover, neither the record nor Arguelles' brief indicates what his testimony would have been if he had testified. Arguelles urges this court to assess the probable impact of testimony without placing before us the substance of that testimony. This invitation to speculate cannot substitute for proof of prejudice. *See Fernandez v. Cook,* 870 P.2d 870, 877 (Utah 1993) ("[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality.").

Alternatively, Arguelles argues that prejudice should be presumed because his counsel's advice effectively denied him his right to testify in violation of constitutional and statutory strictures. *See Rock,* 483 U.S. at 51–53, 107 S.Ct. at 2709–10 (discussing constitutional bases of criminal defendant's right to testify); Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right ... to testify in his own behalf...."); Utah Code Ann. § 77–1–6(1)(c) ("In criminal prosecutions the defendant is entitled ... [t]o testify in his own behalf...."). Although we may presume prejudice under some circumstances, we decline to do so here.

---

**3.** Because Arguelles does not contend that the *government* interfered with his right to testify but that he waived that right in reliance on his *counsel's* erroneous advice, the claim is properly framed as one of ineffective assistance of counsel and not strictly as a violation of his right to testify. *See United States v. Teague,* 953 F.2d 1525, 1534 (11th Cir.) (en banc) ("[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel ...."), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

*Strickland* recognized that prejudice may be presumed when there has been actual or constructive denial of counsel, when the government has interfered with counsel's assistance, or when counsel has acted with a conflict of interest. *See Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. In addition, this court has noted that "pursuant to our 'inherent supervisory power over the courts,' we may presume prejudice in circumstances where it is 'unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice.' " *Parsons,* 871 P.2d at 523 n. 6 (quoting *State v. Brown,* 853 P.2d 851, 857, 859 (Utah 1992)). Arguelles does not argue that any of these circumstances exist in the present case but instead cites the federal district court case of *United States v. Butts,* 630 F.Supp. 1145, 1148 (D.Me.1986), for the proposition that "a defendant's right to testify in a criminal proceeding against him [is] so basic to a fair trial that its infraction [by defense counsel] can never be treated as harmless error." Therefore, Arguelles argues, this court should not require him to prove prejudice to prevail on his claim of ineffective assistance of counsel. However, *Butts* does not represent the prevailing view and, in fact, appears to be the only case in which a court applying the federal standard for ineffectiveness has imposed a per se rule of reversal when a defendant is prevented from testifying by his trial counsel. Rather, every appellate court considering the issue has applied *Strickland 's* two-prong test. *See, e.g., United States v. Thomas,* 992 F.2d 201, 205 (8th Cir.1993); *Nichols v. Butler,* 953 F.2d 1550, 1553–54 (11th Cir.1992) (en banc); *Colorado v. Naranjo,* 840 P.2d 319, 326 (Colo.1992); *Commissioner of Correction v. Rodriquez,* 222 Conn. 469, 610 A.2d 631, 636 n. 9 (1992), *overruled on other grounds by Simms v. Warden,* 229 Conn. 178, 640

A.2d 601, 605 n. 12 (1994); *Wisconsin v. Flynn,* 190 Wis.2d 31, 527 N.W.2d 343, 351–53 (Ct.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). Therefore, we decline to presume that Arguelles was prejudiced by his counsel's advice not to testify. Because Arguelles has not made the requisite showing of prejudice, he cannot prevail on his claim of ineffective assistance of counsel.

■ Arguelles next claims that the district court violated rule 18(e) of the Utah Rules of Criminal Procedure in denying his for-cause challenge of an allegedly biased juror.[4] During voir dire, Arguelles' counsel discovered that one of the prospective jurors knew the children involved in this case and their mother. After questioning the juror as to the nature of this relationship, Arguelles' counsel challenged the juror for cause. The district court denied the for-cause challenge, and Arguelles' counsel exercised a peremptory challenge to remove the prospective juror. Arguelles now asserts that the district court erred in refusing to excuse the allegedly biased juror for cause. Because Arguelles has not demonstrated that he was prejudiced by the denial of his for-cause challenge, we need not determine whether the challenge should have been granted.

This court recently held, "To prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, *viz.,* show that a member of the jury was partial or incompetent." *State v. Menzies,* 889 P.2d 393, 398 (Utah 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). In so holding, we overruled *Crawford v. Manning,* 542 P.2d 1091, 1093 (Utah 1975), under which reversal was required whenever a defendant had to use a

---

**4.** Rule 18(e) provides in relevant part:

The challenge for cause is an objection to a particular juror and may be taken on one or more of the following grounds:

. . . ;

(4) the existence of any social, legal, business, fiduciary or other relationship between the prospective juror and any party, witness or person alleged to have been victimized or injured by the defendant, which relationship when viewed objectively, would suggest to reasonable minds that the prospective juror would be unable or unwilling to return a verdict which would be free . . . of favoritism. . . . ;

. . . ;

(14) that a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging. . . .

Utah R.Crim. P. 18(e)(4), (14).

peremptory challenge to remove a prospective juror who should have been dismissed for cause. In the instant case, Arguelles does not attempt to show that any member of the jury that convicted him was partial or incompetent, but rather asks us to overrule *Menzies* and to reinstate the automatic reversal rule of *Crawford.* We decline to do so.

As we noted in *Menzies,* the doctrine of stare decisis imposes a substantial burden of persuasion on those asking us to overturn one of our prior decisions. *Menzies,* 889 P.2d at 398. Although that doctrine does provide some flexibility to depart from precedent, we will not do so " 'unless clearly convinced that the [precedent] was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from [it].' " *Id.* at 399 (quoting John Hanna, *The Role of Precedent in Judicial Decision,* 2 Vill. L.Rev. 367, 367 (1957)).

In support of his contention that *Menzies* should be overruled, Arguelles cites several United States Supreme Court cases not considered in *Menzies* which he claims undermine *Menzies'* rationale. In *Menzies,* we relied on *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), to " 'reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury' " and to hold that " '[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the [Constitution] was violated.' " *Menzies,* 889 P.2d at 398 (second alteration in original) (quoting *Ross,* 487 U.S. at 88, 108 S.Ct. at 2278). In *Ross,* as in *Menzies* and the instant case, defense counsel exercised a peremptory challenge to remove an allegedly biased prospective juror, the defendant was convicted by an impartial jury, and the defendant appealed, claiming that the trial court erred in denying his for-cause challenge. *Ross,* 487 U.S. at 84, 108 S.Ct. at 2276. The Court in *Ross* rejected the defendant's contention that his "forced" use of a peremptory challenge to cure the trial court's error violated his Sixth Amendment right to an impartial jury and his Four-

teenth Amendment right to due process. *Id.* at 88–91, 108 S.Ct. at 2278–80.

Arguelles asserts that the United States Supreme Court has abandoned this approach in recent cases and now applies an automatic reversal rule similar to that established in *Crawford.* Arguelles does not argue that the Supreme Court has effectively overruled *Menzies* but only that it has abandoned the approach taken in *Ross,* which we relied on in *Menzies* as persuasive authority. Of course, because the rule announced in *Menzies* is one of state law, not federal law, we are not bound to overrule *Menzies,* even if *Ross* is no longer binding on federal courts. Arguelles recognizes this fact and argues only that *Menzies* should be reconsidered. Arguelles cites the following cases in support of his argument: *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

In all of those cases, the Court reversed the jury's verdict without requiring a showing that the jury was partial or incompetent on the ground that the prevailing party had exercised a peremptory challenge in violation of the equal protection rights of the challenged jurors. *See J.E.B.,* 511 U.S. at ——, 114 S.Ct. at 1430 (barring exercise of peremptory challenge on basis of gender); *McCollum,* 505 U.S. at 59, 112 S.Ct. at 2359 (barring criminal defendant's exercise of peremptory challenge on basis of race); *Edmonson,* 500 U.S. at 630–31, 111 S.Ct. at 2088 (barring civil litigant's exercise of peremptory challenge on basis of race); *Powers,* 499 U.S. at 409–16, 111 S.Ct. at 1370–74 (barring prosecution's exercise of peremptory challenge on basis of race despite lack of racial identity between defendant and challenged juror). In reversing the verdicts in these cases, the Court held that potential jurors have an equal protection right to "nondiscriminatory jury selection procedures" and that this right is violated by the exercise of a peremptory challenge on the basis of race or gender. *J.E.B.,* 511 U.S. at ——–——, 114

S.Ct. at 1427–28 (citing *McCollum, Edmonson, Powers* ).

Contrary to Arguelles' contention, these cases do not indicate that the Supreme Court has abandoned *Ross.* In *J.E.B., McCollum, Edmonson,* and *Powers,* the Court was ultimately concerned with the harm done to the excluded jurors, not with whether the defendant was unfairly convicted. Therefore, the Court did not require a showing that the jury was partial or incompetent.[5] In other words, the Court did not automatically reverse the verdicts in these cases without regard to whether the error caused any harm but, rather, concluded that the error did cause harm—to the excluded jurors. In contrast, the Court in *Ross* was not concerned with the *equal protection rights of third parties* but was faced with an alleged violation of the *defendant's rights to due process and an impartial jury.* Accordingly, the Court focused on the harm to the defendant, as we did in *Menzies* and as we do here. Contrary to Arguelles' assertion, *J.E.B., McCollum, Edmonson,* and *Powers* are not inconsistent with either *Ross* or *Menzies*—all of these cases require prejudice to the party whose constitutional rights have allegedly been violated.

Arguelles also claims that *Ross* was overruled by *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J., delivering opinion of the court with respect to part II), in which the Court noted that certain federal constitutional errors which affect the fundamental fairness of the trial itself, i.e., structural errors, are not subject to a harmless error analysis. *Accord Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993). However, *Fulminante* is not inconsistent with *Ross* be-

cause the error at issue in *Ross* was not a structural error. As The Supreme Court has repeatedly held, "peremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial." *McCollum,* 505 U.S. at 57, 112 S.Ct. at 2358; *see also Frazier v. United States,* 335 U.S. 497, 505 n. 11, 69 S.Ct. 201, 206 n. 11, 93 L.Ed. 187 (1948); *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919). Therefore, as we held in *Menzies,* the forced use of a peremptory challenge to cure the trial court's erroneous denial of a for-cause challenge does not violate the Constitution. Because peremptory challenges "do not have a constitutional status, they do not have a structural status." *United States v. Annigoni,* 68 F.3d 279, 285 (9th Cir.1995).

In light of the foregoing discussion, we find nothing in the cases cited by Arguelles that would warrant our concluding that *Menzies* "was originally erroneous or is no longer sound" and we therefore abide by its ruling. Because Arguelles does not attempt to show that any member of the jury that convicted him was partial or incompetent, his claim that the district court erred in denying his for-cause challenge must fail.

■ Arguelles next argues that the trial court misapplied rules 801(c) and 802 of the Utah Rules of Evidence in sustaining the State's hearsay objection to testimony about out-of-court statements offered in support of Arguelles' defense.[6] As part of his case in chief, Arguelles' counsel presented the testimony of Detective Kevin Nudd, who had investigated Arguelles' alleged crime. Detective Nudd explained that he interviewed Arguelles, his girlfriend, and his brother

---

5. However, the Court did hold that the losing party must have suffered some cognizable injury to have standing to assert the equal protection rights of improperly excluded jurors. *E.g., Powers,* 499 U.S. at 411, 111 S.Ct. at 1371. In all four cases, the Court concluded that the losing party had suffered the requisite injury because "[t]he discriminatory use of peremptory challenges ... 'casts doubt on the integrity of the judicial process' and places the fairness of [the] proceeding in doubt." *Id.* (citations omitted) (quoting *Rose v. Mitchell,* 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979)); *see*

*also J.E.B.,* 511 U.S. at ——, 114 S.Ct. at 1427; *McCollum,* 505 U.S. at 56, 112 S.Ct. at 2357; *Edmonson,* 500 U.S. at 630, 111 S.Ct. at 2088.

6. Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). Rule 802 provides, "Hearsay is not admissible except as provided by law or by these rules." Utah R. Evid. 802.

shortly after he was arrested. However, when Arguelles' counsel asked Detective Nudd to recount the substance of these interviews, the State objected on hearsay grounds, and the trial court sustained the objection. Arguelles now contends that the trial court erred in excluding that testimony.

We need not determine whether the trial court erred because we conclude that Arguelles has failed to adequately preserve the issue on appeal. This court has previously noted that "we will not set aside a verdict because of the erroneous exclusion of evidence unless a proffer of evidence appears of record, and we believe that the excluded evidence would probably have had a substantial influence in bringing about a different verdict." *State v. Rammel* 721 P.2d 498, 499–500 (Utah 1986); *see also Hill v. Hartog,* 658 P.2d 1206, 1209 (Utah 1983). In the instant case, the record is silent as to what evidence Arguelles' counsel intended to adduce by his questioning. Therefore, we have no way of evaluating whether that evidence would have persuaded the jury to acquit. Accordingly, we decline to address the merits of Arguelles' claim that the trial court erred in sustaining the State's hearsay objection.

■ Finally, Arguelles argues that the trial court's definition of the "beyond-a-reasonable-doubt" standard in its instructions to the jury was inadequate in that it allowed the jury to convict on "a degree of proof below that required by the Due Process Clause." *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 329–30, 112 L.Ed.2d 339 (1990) (per curiam). The reasonable-doubt jury instruction used in this case reads:

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be a reasonable doubt and not a doubt which is merely fanciful or imaginary or based on a wholly speculative possibility. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of the evidence in this case.

Arguelles contends that under this instruction, the "beyond-a-reasonable-doubt" standard is indistinguishable from either the "clear-and-convincing-evidence" standard or the "preponderance-of-the-evidence" standard and that the definition of "reasonable doubt" contained in the instruction is circular. However, we do not reach the merits of Arguelles' argument because he did not preserve the issue for appeal.

■ As a general rule, "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the ground of his objection." Utah R.Crim. P. 19(c). Arguelles concedes that he did not object to the "reasonable-doubt" instruction before the trial court. However, "[n]otwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice." *Id.* In determining whether an alleged instructional error resulted in manifest injustice, we apply "the same standard we use when determining the presence of plain error under Utah Rule of Evidence 103(d)." *State v. Verde,* 770 P.2d 116, 122 (Utah 1989). For an error to be plain, we "must find that it should have been obvious to the trial court that it was committing error." *State v. Elm,* 808 P.2d 1097, 1100 (Utah 1991).

Assuming, without deciding, that the trial court's reasonable-doubt instruction was erroneous, we do not think the error was obvious. Although this court has not previously addressed the propriety of an instruction like that given by the trial court in this case, the Utah Court of Appeals has approved an iden-

tical instruction on numerous occasions. *See, e.g., State v. Brooks,* 833 P.2d 362, 365–66 (Utah.Ct.App.1992); *State v. Gonzalez,* 822 P.2d 1214, 1217–18 (Utah.Ct.App.1991); *State v. Pedersen,* 802 P.2d 1328, 1331–32 (Ct.App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991). In light of these court of appeals decisions, we do not think that "it should have been obvious to the trial court that it was committing error." *Elm,* 808 P.2d at 1100. Because the trial court's reasonable-doubt instruction was not obviously erroneous and because Arguelles did not object to the instruction before the trial court, we decline to reach the merits of Arguelles' argument.

For the foregoing reasons, we affirm Arguelles' conviction.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.