8. *Accord, e.g., State v. Norris*, 2001 UT 104, ¶ 28, —— P.3d ——; *State v. Lusk*, 2001 UT 102, ¶ 35, 37 P.3d 1103; *State v. Bisner*, 2001 UT 99, n. 5, 37 P.3d 1073; *Featherstone v. Schaerrer*, 2001 UT 86, n. 11, 34 P.3d 194; *Brewer*, 2001 UT 77 n. 4, 31 P.3d 557; *Green v. Louder*, 2001 UT 62, ¶ 34, 29 P.3d 638; *State v. Butterfield*, 2001 UT 59, n. 3, 27 P.3d 1133; *Treff*, 2001 UT 50 at ¶ 11, 26 P.3d 212; *State v. Vargas*, 2001 UT 5, ¶ 42, 20 P.3d 271; *Ellis v. Swensen*, 2000 UT 101, ¶¶ 16–18, 16 P.3d 1233; *Gorostieta v. Parkinson*, 2000 UT 99, ¶¶ 43–44, 17 P.3d 1110; *State v. Helmick*, 2000 UT 70, ¶ 7, 9 P.3d 164; *Thomas*, 1999 UT 2

2001 UT App 305

**STATE of Utah, in the Interest of P.S., a person under eighteen years of age.**

**P.S., Appellee,**

v.

**State of Utah, Appellant.**

**No. 20000923–CA.**

Court of Appeals of Utah.

Oct. 18, 2001.

Mark L. Shurtleff, Atty. Gen., and Jeffrey T. Colemere, Asst. Atty. Gen., Salt Lake City, for Appellant.

Douglas H. Weaver, Rilling & Associates, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and JACKSON, Associate P.J., and DAVIS, J.

## OPINION

DAVIS, Judge:

¶ 1 The State appeals the juvenile court's order amending its previous adjudication of forgery, under Utah Code Ann. § 76–6–501 (1999), and reducing it to falsification of government records, a class B misdemeanor, under Utah Code Ann. § 76–8–511 (1999). We reverse and remand for further proceedings.

## FACTS

¶ 2 On August 13, 2000, Officer William Bridge stopped P.S. for driving without a front license plate. P.S. was driving and there were three passengers in the vehicle.

¶ 3 P.S. told the officer that he had no form of identification with him nor insurance on the vehicle. P.S. identified himself as Augustine Martinez–Gomez and indicated that his date of birth was June 18, 1977. At this time Officer Bridge noticed that there were two open beer cans on the front passenger seat and two open beer cans behind the passenger seat in the rear area of the vehicle. When the officer ran the name Augustine Martinez Gomez through dispatch, no record of a driver's license was found.

¶ 4 The officer cited P.S. for driving a car without a front license plate, driving without a license, and driving without insurance. Officer Bridge explained the time frame for making arrangements on the citation, and that by signing the citation P.S. was not admitting to guilt, only accepting responsibility for the citation. The officer observed P.S. sign the citation "Augustine Martinez–Gomez."

¶ 5 Officer Bridge returned to his vehicle and awaited back up, having decided to impound P.S.'s vehicle. When Officer Barrett arrived both officers approached the vehicle and had all occupants exit and sit on the curb in order to perform an inventory search of the vehicle. During the search the officers found a wallet in the rear compartment of the vehicle. The wallet contained a state

identification card that had a picture of P.S., along with his full name. The wallet also contained a social security card and a resident alien card.

¶ 6 Officer Barrett watched the other three occupants of the vehicle while Officer Bridge called P.S. over to his vehicle and spoke with him individually. At that time Officer Bridge had three identification cards: the Utah State identification card, the resident alien card, and the social security card laid out on the hood of his vehicle. The date of birth on the resident alien card was 6–18–77 and the Utah State identification card was 6–18–83. Each card bore P.S.'s name. When questioned about his actual name, P.S. told the officer that P.S. was his name and that the three identification cards belonged to him. P.S. was taken into custody.

¶ 7 On August 18, 2000, the State filed a petition in Juvenile Court alleging the following against P.S.: two counts of forgery pursuant to Utah Code Ann. § 76–6–501, possession of open alcohol containers in a motor vehicle pursuant to Utah Code Ann. § 41–6–44.20 (1998), presenting false identity to a peace officer pursuant to Utah Code Ann. § 76–8–507 (1999), and driving without a driver's license pursuant to Utah Code Ann. § 53–3–202 (1998).[1]

¶ 8 On August 29, 2000, the Third District Juvenile Court adjudicated P.S. as having committed forgery, a third degree felony, in that P.S. did print or write "a security, revenue stamp, or any other instrument or writing issued by a government or any agency" with the purpose to defraud. Utah Code Ann. § 76–6–501(2)(b). P.S. was also adjudicated as having possession of an open container of alcohol in a vehicle, in violation of section 41–6–44.20; providing false identity to a peace officer, in violation of section 76–8–507; and operating a motor vehicle without a valid driver's license, in violation of section 53–3–202. Additionally, the court found the forgery allegation to be true; it indicated it would "entertain the change of the ruling

regarding [the] allegation . . . if Counsel can provide case law that may prove otherwise within 48 hours."

¶ 9 On October 4, 2000, ruling on P.S.'s motion for reconsideration, the court stated that "the [c]ourt will hereby amend it's [sic] previous order [on the] allegation [of] 'Forgery under section 76–6–502' to . . . 'forgery of official documents.'" The court characterized P.S.'s actions as an attempt to avoid being penalized, not to obtain gain. The court was troubled by the fact that section 76–6–501 is found under the chapter heading entitled "Offenses Against Property." Concluding that the chapter heading limits the statute's reach, and that the "closest" crime related to this situation is falsification or alteration of government records, the Court amended its earlier determination that P.S. was adjudicated as having committed forgery, and adjudicated him as having forged an official government document, a class B misdemeanor, under Utah Code Ann. § 76–8–511. This decision was based on the court's determination that the State failed to prove that the juvenile had a purpose to defraud and that the juvenile's action was a falsification of a government record. The State appeals that adjudication.[2]

## ISSUE AND STANDARD OF REVIEW

■■■ ¶ 10 The sole issue on appeal is whether the signing of a fictitious name to a traffic citation can constitute forgery under Utah Code Ann. § 76–6–501. "'We review for correctness a trial court's statutory interpretation, according it no particular deference.'" *State v. Singh*, 819 P.2d 356, 359 (Utah Ct.App.1991) (quoting *State v. Jaimez*, 817 P.2d 822, 827 (Utah Ct.App.1991)). "When interpreting a section of the Utah Code, we are guided by the principle that a statute is generally construed according to its plain language. Only if we find ambiguity in the statute's plain language need we resort to other methods of statutory interpretation."

---

1. The record does not reflect the disposition of the traffic citation.

2. The court's adjudication relative to the open container of alcohol in the motor vehicle, pre-

senting false identity to a peace officer, and driving without a driver's license, were not appealed by either party.

*State v. Thurman,* 911 P.2d 371, 373 (Utah 1996) (citation omitted).

## ANALYSIS

¶ 11 The State argues the juvenile court erroneously determined that P.S.'s act of signing a fictitious name to a traffic citation does not constitute forgery under Utah Code Ann. § 76-6-501. P.S. contends his conduct did not constitute forgery because his conduct violated only Utah Code Ann. § 76-8-511, falsification of a government record. P.S. also contends that the traffic citation was not a written instrument under section 76-6-501, and that he did not defraud anyone by signing the citation "Augustine Martinez Gomez" because to defraud means to deprive a person of property or any interest, estate, or right therein. We disagree.

> A person is guilty of forgery if, with purpose to defraud anyone, . . . he:
>
> . . . .
>
> (b) makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another, whether the person is existent or nonexistent, or purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.

Utah Code Ann. § 76-6-501(1)(b). A writing can include "printing . . . or any other method of recording information including forms such as: (a) checks, tokens, stamps, seals, credit cards, badges, trademarks, money, and any other symbols of value, right, privilege, or identification." Utah Code Ann. § 76-6-501(2).

¶ 12 The issue is whether a traffic citation falls within the broad language of the forgery statute, which is contained in the Offenses Against Property chapter of the Utah Criminal Code. Neither the Utah Supreme Court nor this court have squarely addressed this issue.

¶ 13 Whether P.S. committed a forgery depends upon whether he made any writing purporting to be the act of another existent or nonexistent person, and did so with the intent to defraud.

### A. Writing

¶ 14 P.S. argues that "any writing" under section 76-6-501 requires a writing that relates to some valuable property interest before it can be the subject matter of forgery. The statute defines "writing" as "any . . . method of recording valuable information including forms *such as*[3] . . . symbols of . . . identification . . . or any . . . instrument or writing issued by a government or an agency." Utah Code Ann. § 76-6-501(2) (emphasis added). A traffic citation is defined as an instrument of the courts, issued by the police, and used to record an individual's personal information and promise to appear in court. *See* Utah Code Ann. §§ 77-7-18 to – 20 (1999 & Supp.2001).[4] Even if we limited our analysis to the statutory examples of a "writing" and the definition of a traffic citation we can reasonably conclude that a traffic citation falls within the broad definition of a "writing" because a traffic citation is an instrument or writing used by a government or an agency as suggested by section 76-6-501(2)(b).

¶ 15 Additionally, although their statutory language may not be identical, other jurisdictions have held that a traffic citation constitutes a writing that can be forged. In *State v. Bedoni,* 161 Ariz. 480, 779 P.2d 355 (Ct. App.1989), the Arizona Court of Appeals held that "[i]n our opinion, there is no question that a traffic citation constitutes 'any paper' and is within the broad statutory definition of a written instrument." *Id.* at 358. Similarly, in *Rushing v. State,* 684 So.2d 856 (Fla.Dist. Ct.App.1996), the Florida Court of Appeals concluded that "signing another's name to a traffic citation does constitute the offense of forgery." *Id.* at 857. The court in that case

---

3. We note that the examples are not exclusive.

4. Because recent updates to the statute are irrelevant to our analysis of the definition of a traffic citation, we cite the most recent version of the statute for convenience.

went on to determine that "[a] defendant's [false] signature on a traffic ticket . . . would be forgery." *Id.; see also Nikolic v. State*, 439 So.2d 828, 829 (Ala.Crim.App.1983) (stating in dicta that a traffic citation would support a conviction for forgery because the ticket serves as an appearance bond once the defendant has signed it). We agree that a traffic citation can, and under the facts of this case, does constitute a writing under Utah Code Ann. § 76–6–501.

### B. Intent To Defraud

¶ 16 "To commit forgery, one must possess the specific intent to defraud 'anyone.'" *State v. Winward*, 909 P.2d 909, 912 (Utah Ct.App.1995) (quoting Utah Code Ann. § 76–6–501 (1995)). "That is, the State need not prove exactly who the defendant intended to defraud, provided the State can prove that the defendant acted with the requisite intent to defraud." *Id.* In situations where the "victims" are not readily recognizable it makes sense to dispense with the requirement that the State identify the victims of the charged forgery. *Id.* For example, the intent to defraud may relate to a "state, county, or municipality, even though the statute in terms refers to the prejudice of the rights of persons." *Id.*

¶ 17 To prove the "purpose to defraud," the State must show that an individual acted with the "knowledge that he is facilitating a fraud." *State v. Kihlstrom*, 1999 UT App 289,¶ 7, 988 P.2d 949. "Fraud" has been defined by the Utah Supreme Court as an intentional misrepresentation offered for the purpose of inducing reliance upon it to gain some advantage. *State v. Kitchen*, 564 P.2d 760, 763 (Utah 1977). More recently, in *State v. Gonzalez*, 822 P.2d 1214 (Utah Ct. App.1991), this court adopted language set forth by the Idaho Supreme Court which stated that " ' "intent to defraud" . . . is simply a purpose to use a false writing as if it were genuine in order to *gain some advantage.*' " *Id.* at 1216 (quoting *State v. May*, 93 Idaho 343, 461 P.2d 126, 128 (1969)) (emphasis added).

¶ 18 P.S.'s actions were intended to "gain some advantage." *Id.* By signing the traffic citation with a false name, P.S. apparently intended to conceal from the authorities his true identity and avoid any potential criminal liability. *See People v. Bigus*, 115 A.D.2d 751, 497 N.Y.S.2d 145, 146 (1985).

### CONCLUSION

¶ 19 The crime committed by P.S. falls within the broad language of the forgery statute. A traffic citation can constitute a writing under Utah Code Ann. § 76–6–501. In addition, a purpose to defraud can include an intent to gain some advantage, which for P.S. was apparently to conceal from the authorities his true identity and escape punishment. Therefore the trial court erred by amending the adjudication of forgery to an adjudication of falsification of government records.

¶ 20 Reversed and remanded for further proceedings consistent with this opinion.

¶ 21 We concur: PAMELA T. GREENWOOD, Presiding Judge, NORMAN H. JACKSON, Associate Presiding Judge.